# SUPREME COURT OF TEXAS.

## TYLER TERM, 1870.

---

### F. Wolz v. The State.

1. The word " gaming " has an innocent as well as a culpable signification. In the phrases " for the purpose of gaming " and " used for gaming," to be found in Article 2047, Paschal's Digest, it has a culpable sense and is synonymous with *betting*.

2. By the words " keep " and " keeping," in the same enactment, is intended a holding in readiness a table for the purpose of obtaining betters.

3. Whenever it is evident that the keeping of a table is not for the purpose of obtaining betters, there is no violation of the statute. A table may lawfully be kept and used for games of recreation or amusement.

4. See this case for a lucid exposition of the polite game of " pigeon hole."

5. By Article 2052, Paschal's Digest, it is not intended that a conclusive case is established against a defendant by proof that he played, dealt or exhibited a game mentioned in the three preceding articles. Such proof makes only a *prima facie* case, which the defendant may destroy by evidence that there was nothing bet, etc.

APPEAL from Harrison. Tried below before the Hon. J. B. Williamson.

This unfortunate appellant was convicted under three separate indictments for keeping a gaming table for the purpose of gaming, and was mulct in a fine of twenty-five dollars for each conviction.

It not appearing that he profited in any respect, he naturally appealed.

Two of the indictments did not designate any particular kind of table or game; but the third was more explicit, and introduces

us to the intellectual and popular pastime of "pigeon-hole." For the benefit of such members of the bar, if such there be, as are uninitiated into the science of "pigeon-hole," it is deemed well to give here a description of the game, which was presented to the jury by a witness in these cases, who would make a fortune in Patent Office practice at Washington, framing "specifications" of strange inventions.

The witness testified that the defendant kept in the back room of his retailing establishment "a table resembling a billiard table, the difference being that at one end of the table the cushioning was elevated against a wall of wooden structure, higher than at the other end or either side; that this wall was perforated with holes from one side of the table to the other; that these holes resembled pigeon holes, and were on a level with the face of the table, and over each of them was placed a number or figure, the numbers being promiscuously distributed, and running from one to twenty. The table was played on by using balls and a cue or stick, with which the balls (somewhat smaller than billiard balls) were struck against each other, the object being to make one ball drive another into some of the holes, the number over the hole into which the ball is so driven being the amount or number the player counts in the game by that stroke. This, by the rules of the game, entitles the player to another stroke, and so on until he fails to hole a ball, and thus fails to make a count; upon which event the next player takes the cue, and so on until one hundred, or other agreed number, is obtained by all the players save one, who by that consummation is determined to be the party beaten. But sometimes this programme is reversed, and the first player who attains the number agreed upon is the losing party, the struggle in this case being to get the fewest balls into the holes, and them into the holes indicating the smallest numbers. The table is called a pigeon-hole table, and the game 'pigeon-holes.'"

While the testimony fully proved the assiduity with which the

habitues of Wolz's grocery cultivated this charming pastime, yet it also established the exemplary fact that they were animated solely by a desire to excel, or some other ennobling motive, and not by the lust for lucre. In fact, the appellant allowed no betting at his pigeon-hole table, and on one occasion broke up a most exciting contest and impounded the balls to frustrate an incipient bet.

But despite this feature in the case, the court below instructed the jury that if the defendant " kept or exhibited a table for the purpose of gaming, or for the purpose of playing a game called pigeon-hole," they must find him guilty; from which it is apparent that the court *a quo* adjudged pigeon-hole to be gaming *per se in rerum natura.*

The defendant's counsel, with the characteristic contumacy of his kind, took a different view of the matter, and postulated the following propositions to be presented to the jury as predicates for their verdict:

First—That the fact that the defendant kept or exhibited a table for the purpose of gaming, can only be proved by evidence that at the time and place such keeping or exhibiting is charged to have occurred, betting was done at such table.

Second—It is no offense against the law for a man to own a gaming table, and such table can only be said to be kept or exhibited for the purpose of gaming when there is betting at it, or it is kept or exhibited for that purpose.

Third—That to constitute a keeping or exhibiting a table for the purpose of gaming, it must be proved to have been kept or exhibited for the purpose of obtaining betters.

These instructions were refused, and exceptions were duly reserved.

In the first of the three cases, the jury returned into court with the following verdict:—" We, the jury, find the defendant not guilty as charged in the indictment of keeping a gaming table; but do find defendant guilty of keeping a table for the purpose of

playing pigeon-hole, and assess the fine at twenty-five dollars." The court refused to receive this verdict, and sent the jury back, with verbal instructions as to the form of their verdict. They soon returned with the same verdict, amended by the insertion of the words "a game called" immediately before the word pigeonhole; and in that form the verdict was received. To this process the defendant excepted.

In the two subsequent cases, it seems there was a simple verdict of guilty, with a like fine. The evidence in the three cases was to the same effect.

New trials being refused, and motions in arrest overruled, the defendant appeals in all the cases.

*Moore & Shelley, W. Stedman, Poag & McKay*, and *N. H. Wilson*, for the appellant.

*E. B. Turner*, Attorney General, for the State.—The errors complained of are four in number:

First—In overruling motion for a continuance. No bill of exceptions was taken to this ruling, and the practice is so well settled that this court will not notice the point unless so saved to need authorities.

Second—The court erred in his charge to the jury. My reply to that is, the charge is just as full as the law, and is correct, and he was under no obligation to do more than charge the law, and the charges asked, it was not error to refuse; although we may say, for the sake of the argument, that they were in and of themselves well enough; the court would not reverse had they been given, nor will it reverse because they were not given.

I could wish judges would follow the example of stopping when they have given the law in charge. This disposes of all but the fourth error assigned.

Defendant places much stress upon the fact that it is not proved that any money or thing was actually bet.

This indictment is framed under Article 412 of the code. (Paschal, Art. 2047.) It is believed that the case of Stearns v. The State, 21 Texas, 693, settles the question, that no matter whether it appears that any betting was done or not, the offense is complete without.

If, then, the offense is complete without, it matters not what the proof may have been. (See case last cited, p. 696.)

The testimony fully establishes the fact that the table is a gaming table, and was kept and exhibited by defendant, and that is enough; he is not indicted for betting at any gaming table.

The cases in 25 and 26 Texas, cited by counsel, can have no bearing upon this, as in those the betting was the offense.

The facts show that this table is kept at one of those public places where gaming is prohibited, without reference to bets. Cards may not be played for amusement at such a place. Shall it be said that a gaming table may be kept and used at such a place, and lawfully used, unless money is bet? We think not.

MORRILL, C. J.—"If any person shall keep or exhibit, for the purpose of gaming, any gaming table or bank, of any name or description whatever, or any table or bank used for gaming, which has no name, or shall be in any manner interested in keeping or exhibiting such table or bank at any place, he shall be fined," etc (Art. 412, Criminal Code.)

"The word 'exhibited,' is intended to signify the act of displaying the bank or game for the purpose of obtaining betters.', (Art. 417, Criminal Code.)

The word "gaming," has two significations, one of which refer to what is illegal, and the other to what is legal and proper Where the statutes provide that "there shall be assessed of each and every person, or firm, keeping a billiard table, an annual direc tax of fifty dollars for each table so kept," (Art. 5155,) it author izes any person to keep, for the purpose of gaming, a table, called

a billiard table. Gaming is here used in a different sense from gambling. It is evident that the gaming contemplated as illegal by the statute, is synonomous with betting. As the "word ' *exhibiting*' is intended to signify the act of displaying the bank or game for the purpose of obtaining betters," so the word "keeping" is intended to hold in readiness a table for the purpose of obtaining betters. Whenever it is evident that the keeping a table is not for this purpose, since a person can keep a billiard table, or table for dominoes, backgammon or chess, for amusement solely, there is no violation of the statute.

The statute intended a *prima facie* case to be made out against every person liable to be charged or specified therein, but it could not be intended thereby that the presumption should be a conclusion, and that gaming signified gambling universally.

"It is the duty of the judge to state plainly the law of the case." (Art. 595, Criminal Procedure.)

The charges requested to be given to the jury and refused, would have fully justified the jury in finding the verdict first brought into the court by them, "that the defendant was not guilty of keeping a gaming table;" and this was all the charge in the indictment. That the charges requested and refused should have been given in "stating plainly the law of the case," is simply to say that the court should have charged the jury, that a table may be used and kept for the purpose of games of recreation or amusement solely; and when so kept, the person keeping it is not chargeable criminally.

We consider the judge erred in setting aside the verdict first found, and not discharging the defendant. Proceeding to do what the district court should have done, the judgment is reversed and the defendant discharged.

The positions taken in this case are in compliance with the points decided in Stearns v. the State, 21 Texas, 695; Booth v. the State, 26 Texas, 203; and State v. Barton, 25 Texas, 420.

Reversed.