POSEY HILL V. THE STATE.

No. 21850. Delivered January 14, 1942.
Rehearing Denied February 25, 1942.

The opinion states the case.

*Polk Shelton* and *Horace H. Shelton,* both of Austin, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

The appellant was awarded a penalty of two years in the penitentiary for the offense of keeping and exhibiting a policy game.

The testimony of the only two witnesses used in this case showed that they would solicit out on the street persons to buy tickets on a numbers game; the purchaser paying five cents

would select three numbers. There would then be 78 numbers placed in some kind of receptacle, and out of such numbers there would be drawn 12 thereof, and if the person purchasing such ticket had selected three of such numbers, then he would receive from the person "keeping" such game the sum of $10.00. If he had purchased a ten cent ticket, and was fortunate enough to have selected three numbers that were drawn, then his reward would be $20.00.

Although the elements of a lottery were present in the method by which the three numbers were selected, nevertheless these facts, as above set forth, constitute the game of "policy" or "numbers" and not a lottery. See Schwarz v. State, 124 S. W. (2d) 392, for a discussion of similar facts.

It is contended that appellant should have been given a peremptory instruction of not guilty by the trial court. It is true that one of the State's witnesses refused to positively identify appellant as being present at any of the drawings. Not so, however, as to the remaining witness from whose testimony we quote:

"I don't think I went to but two or three drawings in 1941. At each of those drawings the defendant, Posey Hill, was there. I never did see another white man out there at one of those drawings. I call the people I sell to my customers.

"I have had a customer win as much as $30.00, and I got the $30.00 to pay him off from Mr. Hill, Posey Hill. Mr. Posey Hill himself gave me the money. He has given me money himself once or twice. I had $30.00 you might say, about three or four times. Both times he gave me $30.00 to pay off. * * *

"I don't know how many writers were working for Posey Hill. I know a fellow they called 'Preacher,' but that wasn't his real name. I have seen Posey Hill with 'Preacher' with number sheets or sheets of numbers. I had a conversation with Posey Hill at that time. It was the following morning after the night drawing, why, I saw Mr. Hill, and told him that 'Preacher' had thought he had some money on his books. He said, 'I have got Preacher's book, but one of the numbers has been erased off the book. It has been changed.' I said, 'Preacher thought he had a $10.00 connection on it,' and he said, 'No, it has been changed,' and I said, 'I would pay it, if I was you anyhow,' and he said, 'No,' he wasn't going to pay

anything. That was Posey Hill, the man sitting right here.

"All of these drawings I attended were in Travis County, Texas.

"At these drawings I couldn't say where the paper sack and balls came from, but I didn't take them there. I was there at the drawing, and there was not anybody else there at the time other than Hill. I wrote down two copies of the numbers. I would have a book with a carbon copy. I made me a copy of the numbers myself at the drawing. Mr. Hill would make a copy too. When I would make my copy, I would make it with a lead pencil on a scratch pad like that.

"At the times Posey Hill paid me $30.00, I would get a copy of the sheet with 12 numbers on it, but not from him. After I got a copy of it with the numbers on it and my customers won, Posey Hill would come and pay me the $30.00 after that."

It seems to us that the charge in the indictment that appellant "kept" a policy game did not necessarily mean that he had to have a location where the game could be found, or where his paraphernalia was stored, or where he had an office, or where the drawings were held. The word "Keep" as used in the statute, Art. 619, P. C., carries with it the meaning that he conducted, carried on, maintained or managed such game; that he exercised control and direction over same. See Words and Phrases, Permanent Edition, Vol. 23, pp. 498 and 499, and cases there cited.

We think that the fact that the winning numbers are obtained by a lottery drawing would not constitute the matter herein complained of to be a lottery as denounced by statute; such drawing might with as much propriety have been called a chance drawing, or one arrived at by chance, and would have meant the same thing, the word lottery being incidentally applied to the method by which the chance drawing was held, and has no further significance.

We think it is evident herein that appellant kept, or managed, or controlled, or conducted, or carried on, or maintained a game called policy, and therefore offended against Art. 619, P. C., and no error being shown in the record, the judgment is affirmed.

ON MOTION FOR REHEARING.

HAWKINS, Judge.

In his motion for rehearing appellant calls attention to the fact that the conviction herein rests upon the uncorroborated testimony of an accomplice, and emphasizes the danger of injustice resulting therefrom. The Legislature has settled the question by enacting into law Art. 639 P. C., which in part reads: "For any offense enumerated in said foregoing articles a conviction may be had upon the unsupported evidence of an accomplice or participant." The offense of which appellant was convicted was one of those enumerated in the "foregoing articles" referred to.

The motion for rehearing is overruled.