BENNIE THOMPSON V. THE STATE.

No. 22830. Delivered May 31, 1944.

The opinion states the case.

*H. E. Kahn* and *E. T. Branch,* both of Houston, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a sentence of ninety days in the county jail on a charge that appellant permitted gambling paraphernalia to remain on his premises and on premises under his control.

The prosecution is under Article 630 of the Penal Code, reading as follows:

"If any person shall knowingly permit any gaming paraphernalia, table, or device or equipment of a gaming house, of any character whatever to remain in his possession or on premies under his control or of which he is owner and to be used for gaming purposes, he shall be imprisoned in jail not less than thirty days nor more than one year."

The specific charge, as defined in the indictment, was that Bennie Thompson permitted a book to remain on his premises and under his control, which book was "used to record plays and bets on a policy game." The appeal challenges the sufficiency of the evidence to sustain the conviction.

Art. 619, P. C., denounces a "policy game" as a gambling game but does not define the game. It has been judicially defined as a game of betting on the appearance of numbers, the player against the keeper that certain numbers selected by the player will appear out of a list of numbers (usually from 1 to 78) drawn or to be drawn by the keeper of the game by chance or otherwise. (Cagle v. State, No. 22,490, not yet reported). (Reported on page 354 of this volume). It follows, therefore, that in order to constitute the game of policy there must be a series of segregated acts which, taken together, compromise and make up the complete game. This is the distinguishing feature between a policy game and others which depend upon the appearance, or drawing, or numbers. It follows that a "book used to record plays and bets on a policy game," as charged in the case now before us, becomes gambling paraphernalia only when used as a part of the game itself, and the offense as charged depends upon proof that the book was in fact so used.

The facts show that appellant was seen often in a room in the rear of a barber shop and shine parlor in Houston, sitting at a table where people would come, some of them paying him money and he giving them a piece of paper with writing thereon, and then appellant would make an entry on some book. A book was offered in evidence and showed many numbers entered thereon, some entries evidencing initials such as "G," "B. S." and "C. H.'" "Bx." and "5.00, "25.00," "2.50," "50.00" and other figures and letters, these entries claiming to evidence what numbers the people played; some of the plays shown were "ten spots," some "nine spots," it being claimed that one could look at the book and tell what sets of numbers were played in such game. A witness had seen appellant give people slips in exchange for money, sometimes in the presence of as many as ten people; he was writing in a book and players were giving him money. A witness said: "The defendant knew me and I was standing right there while he was having a transaction. * * * * * I know writing pretty well and know them when I hear them. He could put down any given number between 1 and 80." Another witness testified that a certain slip shown him and introduced in evidence was "just a slip with numbers reference to the plays taken on the book, but I don't know that it is his. It is used to get players and the purpose of the slip is to see if anybody won—if the players won."

The difficulty which we find with the record is that the evidence is insufficient to show that the "plays" made were in connection with the book kept and that they were such as to con-

stitute the transaction a policy game. Having alleged that the book was "then and there used to record plays and bets on a policy game," it was incumbent upon the State to establish that as a fact by the evidence in this particular case. We do not consider that the evidence furnishes us with facts and circumstances definitely and certainly showing that the books introduced in evidence as a basis of the charge had been used or were being used in a game of policy that had been played. If it be shown that they were such books as were commonly used in games of policy, there is still an absence of testimony that they were actually used in such a game.

This being our conclusion, it becomes unnecessary to discuss other features of the evidence upon which appellant relies for a reversal of the case. It is sufficient to say that we are not able to resort to the record of other similar cases before this Court to aid a question of fact in the instant case. The record before us being incomplete, we are unable to sustain the conviction.

The judgment of the trial court is reversed and the cause is remanded.