WALTER CROWDER YOUNG v. THE STATE.

No. 23594. Delivered February 26, 1947.
Rehearing Denied April 16, 1947.

A. S. *Baskett* and *Joe A. Faucett,* both of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The conviction is upon an indictment charging rape of a female not his wife, who is under the age of fifteen years. The penalty assessed is death.

The appellant is a married man, was twenty-seven years of age at the time of the trial, and had one child, a girl twenty months old. He testified in his own behalf, identifying himself as the proper party, and admitting sexual intercourse with the prosecutrix on the date alleged. He testified, however, that the meeting was by previous arrangement through another girl, and that his act was with the consent of the prosecutrix. He asked for suspended sentence in case of conviction. He also detailed the movements of the parties much in keeping with that hereinafter more fully set out; his association with the other men charged in the crime, their drinking some seven to ten bottles of beer each at different places during the evening, and finally, the purchase of two pint bottles of whisky. He denies the robbery detailed by other witnesses, and pictures his companions,

together with two boys, in company with the four girls, as being engaged in a wild party of some four hours of the night.

Contrary to the statement of appellant, the state's evidence with much detail and consistency between the witnesses is summarized by the state's attorney, in his brief, in a very accurate manner which we quote as follows, omitting the names, other than the given name of each of the girls involved, as well as of their innocent companions, the two boys.

"The statement of facts reflects that on the night of the commission of said alleged offense Billie, a girl fourteen years of age, and her young girl friend, Thelma, went to a cafe in Libson about seven o'clock in the evening for the purpose of meeting two other young girl friends, Virgie, fifteen years of age, and Stella, also fifteen years of age, and that the four intended to go to Tipton's skating rink and dance hall. While they were in the cafe two young boy friends of theirs, Douglas, age sixteen· years, and A. J., age seventeen, came by in A. J.'s Ford coupe. The girls got in the car with them and before they had driven very far they passed the bus and saw Virgie and Stella on it; they turned, went back to Lisbon and picked up those two girls and all went to Tipton's. Upon arriving there the two boys started skating and the four girls went to Lancaster to a ball game, returning in about an hour but stopped on their way back at a drugstore for ice cream. Upon their return to Tipton's all six of them, the four girls and two boys, went back to Lancaster to the ball game and stayed until it was over, about ten o'clock at night. They then decided to go back to Tipton's, all six of them in the Ford coupe. Thelma and Billie were sitting in the back of the car and the other four were in the seat.

"As they circled the square in Lancaster a car was observed following them. A. J. stopped at a filling station to get water for his car and the car which had been following them stopped on the opposite side of the street. After securing the water they started for Tipton's, and the car which had been parked across the street started up and met them on the next corner, and when they had gone about two miles the car pulled up alongside of them and one of the occupants, later identified as appellant, pointed a pistol at the driver and said, 'Pull over and stop.' He complied by pulling his car to the side of the ditch and stopping. They were all then told to get out of the car.

"There they took a billfold and its contents from A. J., one also from Douglas, and a purse from Stella.

"It developed that there were three men in the second car, which was a two-seated car, and that they not only had a pistol but had a rifle also. ·

"While they had these young people there on the side of the road a blue Ford came up and someone asked 'What's the matter?' and Young said, 'Oh, we've had a flat. Go on. We have it fixed now.'

"The three men then got in the front seat of their car and required the six young people to get in the back seat of the car. They kept the pistol and rifle drawn on these young people and told them to not say a word, for if they did they would kill all of them. From the point where they first stopped the Ford coupe they drove about a mile or so down the main road and then turned off on a dirt road, far enough away from the main road so as not to be seen by occupants of a passing car.

"After they arrived at this point on this side road the three men decided their car was about out of gasoline and asked A. J. if he had any gasoline in his car, and A. J. told them he must have four or five gallons. One or two of the three parties went for his car and brought it, but they were unable to syphon any gasoline out of it for their car. Thereupon, one or two of said parties were sent in the car to get gasoline. While they were gone all of the young people were kept under guard at the point of a gun.

"The three men who had stopped, kidnapped and held the young people prisoners, referred to each other by number during the night in question, Young, the appellant, being referred to as No. 6, Riddle as No. 3, and Jett as No. 9.

"When the parties came back from getting the gasoline Jett took Billie off back of the car and there raped her, and told her that if she didn't submit he would tell them to kill all of you, not only you, but all of you. They went back to where the remainder of said persons were, and then Young carried Virgie, and Riddle took Stella off some little distance from the car, each raping the girl which he had taken, while Jett acted as guard, keeping the others prisoners. After they returned Jett again took Billie away and again raped her and brought her back; then Riddle took Thelma away, and Young took Billie down the road and told her that she was the only girl that he wanted anything from. She begged him to leave her alone. He wouldn't do it and told her that if she didn't he would kill her. He removed her clothes, and by force had intercourse with her, telling her that if she didn't submit he would not only kill her but

the rest of them. Riddle did not rape Thelma for the reason that her monthly periods were on.

"After Young brought Billie back the six young people, already in their Ford coupe, were told by Young not to tell anyone what had happened because if they did he would find it out, that it would be in the papers, and that he would not get them all at once but that he would get them one at a time. He told them how to carry the several persons home; to take Stella to Lancaster first, and then carry Thelma to Lisbon, and then to carry Virgie and Billie home. They carried out the instructions, and when they arrived at Billie's home she and Virgie went in and there reported to Billie's mother what had happened, this being probably about two o'clock in the morning. The girl's mother called the two boys, their companions, in the house and then officers were notified and came out and a complete report was made to them. Subsequently, appellant and his companions in crime for the night were arrested and indicted.".

Appellant brings forward five bills of exception, the first four of which complain of the admission in evidence by the court of testimony as to the acts of rape on the other girls present, and on the prosecutrix by James Jett. In each of these bills this testimony is referred to as stating that the complained of transactions were "* * * at the time and place where the offense is alleged to have been committed." Such statement seems to be in accord with the record. Under this state of facts the evidence was admissible. See 18 Texas Jurisprudence, page 77, section 39, and authorities there discussed; White v. State, 7 S. W. (2d) 1086, with authorities therein discussed.

We have noted very carefully the proposition of appellant in his brief, together with authorities cited. This proposition is that the "acts, conduct and violations of the law by third persons, not in the presence of the defendant, and *not connected with the transaction* for which appellant was on trial, is not admissible * * *." (Emphasis ours.) The record is without dispute that all of the other offenses were at the same time and place, and a part of the transaction in which all parties were engaged as principal offenders; and, as stated by the court's qualifications to the bills, the record "showed a conspiracy and an acting together by each of said parties in carrying out the common design to rape by force, the several girls in the group, while they maintained domination and control of the entire group of girls and boys by the use of firearms." It showed a continuity of action from the time the party of young people were taken into custody until their release.

This qualification sufficiently sustains the action of the court in admitting the evidence. It is noted further that the offense for which appellant was on trial was the last act performed by the parties, and that it is hardly describable without detailing all of the things that went before, which is necessarily admissible evidence.

The fifth bill of exception relates to the argument of the assistant district attorney who, it appears, attempted to make reference to the ages of the girls involved which was, it is indicated, to be followed by some reference to the children of jurors. The statement he had in mind making is not revealed. The cautious trial court sustained the objection instantly, when made, and instructed the jury not to consider what had been said. We find nothing inflammatory in the predicate which the assistant district attorney is quoted to have made in an effort to argue something further before the jury. Furthermore, the bill of exception is defective and may not be considered for the reason that there is no statement negativing the possibility that counsel for appellant had invited the argument, or that it was in reply to any defensive argument.

The investigation of this crime by the law enforcement officers, as well as the trial of the case which was conducted with great care and caution, reflects much credit on the officers involved. We find no support in the record reflecting on the previous conduct of the girls involved other than that found in the testimony of the accused. Even if the jury had accepted his statement for its full value, they would have been authorized under the law to inflict the extreme penalty. The circumstances depicted by the evidence require no comment to justify the jury's verdict. It was their province to find appellant guilty and to assess the penalty. This they did, concluding a trial upon a valid charge with legal evidence.

A review of the case reveals no error requiring a reversal. The judgment of the trial court is affirmed.

ON MOTION FOR REHEARING.

GRAVES, Judge.

In his motion appellant complains because of the trial court's action in admitting the testimony relative to the acts of Riddle and Jett at the scene of the alleged rape of the girl, Billie, it being shown that two other girls were raped by Riddle and Jett, as well as a further rape of Billie also by Jett. The learned

trial judge qualified this bill in which it is shown that he admitted the same on the ground of the existence of a conspiracy between Young, Riddle and Jett to do the very thing they did in thus outraging these girls, as well as such acts being res gestae of the whole transaction.

Webster's New International Dictionary (2d Ed.) defines a conspiracy to mean, among other things, "an agreement, manifesting itself in words or deeds, by which two or more persons confederate to do an unlawful act, or to use unlawful means to do an act which is lawful."

The facts show that these three men were watching these girls and boys as they were driving around the inhabited streets of the city on the night of the offense in question. We find them stopping across the street while these girls and their boy companions were getting water for their car at a filling station; we find them following this car as it drove away from the filling station, slowing down when the boys slowed down their car and going faster when the boys drove faster; we find them with prearranged numerals to use instead of the conspirators' names in their conversations, Nos. 3, 6 and 9 being their agreed upon names; we find them curbing the boys' car on a side street and ordering all the girls and their escorts out of the car; with a pistol and rifle they took possession of all these young people and by armed guard each at different times kept them under control by force and fear while No. 6, or No. 9, or No. 3, each in turn took a girl aside and debauched her under threats against her life, as well as against the lives of all the others; we find them also making arrangements for their leaving this scene after they had gratified their lust by violating these girlish bodies, one of them three times. That there was an agreement in words, as well as deeds, between these three men to do this unlawful act, not only prior to its accomplishment, but also throughout the hours that they held these young persons captives, seems plain to us. We are of the opinion that the acts of all the conspirators were admissible against each of them during the existence of such conspiracy, and the trial judge was correct in allowing the acts of each conspirator to be proven herein.

In the case of Cox et al v. State, 8 Tex. App. 255, (see page 303) it is said:

"To us it seems too plain to admit of argument, that, when two or more are found acting together, with an unlawful intent in the commission of an offense, the common design and acting

together makes them *ipso facto* conspirators,—endows them as a body with the attribute of individuality,—merges the conspiracy to do the act in the act itself; and that the previous acts and declarations of each or any such principal offenders in pursuance of the agreed plan, and tending to throw light upon it or the motive or intent with which it was committed, is and should be received as legal and admissible evidence against each and all, whether indicted, prosecuted, and tried jointly or separately," (citing 1 Bishop's Cr. Law. sect. 432; Kelley v. The People, 55 N. Y. 566; 2 Whart. on Ev. 1205; 47 Ind. 568.)

We are also of the opinion that the acts of the other conspirators were herein admissible under the doctrine of res gestae. 18 Tex. Jur. p. 216, sec. 125, reads as follows:

"As a general rule the acts or declarations of one conspirator to be admissible against another must have occurred during the pendency of the criminal enterprise and in furtherance of its objects. If the acts and declarations occurred while participating in the offense for which the conspiracy was formed, they are admissible as a part of the res gestae," (citing numerous cases).

The testimony is clear to us that these three men conspired together to debauch these young girls, and did so by means of force and threats; that appellant by such means violated the body of this 14-year-old girl in pursuance of and by means of such conspiracy and now faces punishment by virtue of such offense. While the punishment assessed herein is drastic, yet such matters are within the province of the trial jury; and taking into consideration the seriousness of this assault upon our laws as well as our basic concept of society and the purity of our young girlhood, it does not lie in the mouth of this court to say that such verdict is not a righteous one. This man has received what we deem to be a fair trial in the courts of our country, and we see no reason to interfere with the proceedings relative thereto.

We are impressed with the correctness of the original opinion relative to the remarks of the Assistant District Attorney as shown in Bill of Exception No. 5.

The motion for rehearing is overruled.