Ronald Dale **FARRINGTON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 44819.

Court of Criminal Appeals of Texas.

June 21, 1972.

Rehearing Denied Feb. 14, 1973.

Will Gray, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Calvin Botley, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of conspiracy to commit theft. In a trial before the court, the punishment was assessed at five years.

The appellant was indicted along with fifteen others for entering into a positive agreement to steal money of over the value of fifty dollars from Truett Kennedy. A motion to sever by all of the other defendants was granted and the appellant was tried alone.

Each complaint attacks the sufficiency of the evidence to show that the conspirators agreed to take money with the intent then and there to deprive the owner of its value and to appropriate it to their use and benefit.

This is a circumstantial evidence case. Kennedy, the alleged owner, was the executive vice-president of the Goodpasture Grain Company in Galena Park. Ranger J. F. Rogers testified that he had received information about two weeks prior to the day in question "that there would be twelve grain trucks pulling in the Goodpasture Grain Company on this particular day that would only be partially loaded, that there would be two men parked in a pickup truck within sight of the scales with walkie-talkies in contact with two men under

the scales and that these trucks would come across the scales and the man in the pickup would contact the ones under the scales and have them set a block, manipulate the scales."

Officer Edwin Collins of the Department of Public Safety testified that beginning about 7 a. m., on May 13, 1966,[1] he placed defendants McCallon and Bergner under observation for about two. hours. During this time he saw them "pick up a microphone and hold it to the mouth as if using a radio" but that he did not overhear any conversation.

Ranger C. A. Neal testified that about 9:30 a. m., on the date in question, he and Ranger Rundell entered a manhole at Goodpasture Grain Company where they observed appellant lying on an air mattress underneath the scale platform. After they shined a light on the appellant and another man with him, appellant crawled toward them, tried to escape, and a "little scuffle" ensued. Ranger Neal further testified that after he subdued appellant, he recovered two air mattresses, walkie-talkies and some large concrete blocks.

The arrest of appellant and his companion, as well as the arrest of the two men in the pickup, followed the weighing of twelve grain trucks which had been kept under observation and which were driven by the other twelve defendants.

Edward McDonough, an assistant district attorney, testified he monitored a citizens band radio at the scene for about two hours beginning at about 7:15 a. m., on the date in question. The first transmission he heard was, "Larry will be the first in, in about three minutes." Then at 7:17 a. m., unit one to unit two, "He will be next after this one." Then between 7:18 and 7:19 a. m., "Here he comes to work his morning. Can you read me this morning? Larry is on time. Your baby is there." McDonough related other transmissions he

---

1. This case was tried in June of 1969. The sentence was pronounced in 1971. Extensions of time for filing briefs were granted and the record reached this Court October 13, 1971.

heard on the radio during the two hour period such as, "Another load is coming in about five or six minutes;" "Looks like Cliff is the next one this morning. Yep, he's there;" "Little Joe is next after this one;" "Looks like Baby Bruce is here. He's a little late this morning, but on time."

After all twelve of the trucks had been weighed, their drivers were arrested.[2] The trucks were reweighed before they were unloaded beginning at 11:57 the same morning. Ten of the partially loaded trucks registered more than twenty thousand pounds less on the second weighing and the other two more than fifteen thousand pounds less.

E. O. McGowen, a licensed scale mechanic, testified as to how the concrete blocks found near appellant could have been placed on a lever under the scales to reflect an increase in weight. He stated that if enough weight were put on the lever, it could result in a change of as much as twenty-six thousand pounds being shown on the scale.

Ranger Neal testified he was able to talk over the radio in the pickup occupied by the defendants McCallon and Bergner to Ranger Rundell who was using the walkie-talkie recovered from appellant.

Kennedy testified as to the difference in weights of the twelve trucks (while still loaded with wheat) before and after appellant was removed from under the scale platform. According to Kennedy, the heavier weights recorded while appellant was under the scale platform would have resulted in a payment of approximately Nine Thousand Dollars for non-existent wheat. Kennedy further testified that many of the trucks had been to the elevator before; that Howerton and Shelton, a firm of Neosho, Missouri, was the shipper of the grain and if everything had been in order when the trucks were first weighed,

the checks for payments on those weights would have been made payable to Howerton and Shelton.

Article 1624, Vernon's Ann.P.C., defines conspiracy as a "positive agreement to commit a felony." Article 1623, V.A.P.C., provides, "The offense of conspiracy is complete, although the parties conspiring do not proceed to effect the object for which they have so unlawfully conspired."

■ The conspiracy to commit a crime and the commission of the substantive crime which is the object of the conspiracy are separate and distinct offenses. Wilson v. State, 127 Tex.Cr.R. 152, 74 S. W.2d 1020. An indictment charging a conspiracy to commit a felony need not allege the offense intended with the particularity necessary in an indictment charging the commission of the intended offense. Nisbet v. State, 170 Tex.Cr.R. 1, 336 S.W.2d 142.

■ A positive agreement may be shown by circumstances and overt acts of the participants or principals of an offense. Roberts v. State, Tex.Cr.App., 375 S.W.2d 303. See Young v. State, 150 Tex.Cr.R. 378, 201 S.W.2d 46; Marks v. State, 144 Tex.Cr.R. 509, 164 S.W.2d 690; 5 Branch's Ann.P.C.2d, Section 2901, page 462. Are the acts and circumstances proved sufficient in the present case?

The appellant and others were caught in the overt act of manipulating the scales for particular trucks in a well organized and complex manner. Had the law enforcement officials not intervened when they did, the logical result of this manipulation according to Kennedy's testimony would have been for Kennedy to pay Howerton and Shelton approximately Nine Thousand Dollars for non-existent wheat. There can be no doubt of the participants' intent to deprive the owner of money in a fraudulent fashion.

2. All of the truck drivers, the radio operators in the pickup truck and the two at the scales were named in the indictment.

The evidence does not show *how* any of those indicted for conspiracy were to benefit from the deprivation of Kennedy but no other logical inference is possible. Clearly Howerton and Shelton were to be paid. The general theft statute in Texas, however, requires an intent to appropriate whatever is fraudulently taken "to the use or benefit of the person taking." Article 1410, V.A.P.C.

Such an intended appropriation is the only possible logical inference from the facts in this case. Common sense dictates that sixteen people would not have engaged in such a complex plan to take money unless it were intended for their use or benefit in some way.

■ There is also good reason for holding in a circumstantial evidence case of conspiracy to commit theft it is unnecessary to show an intent to appropriate to the *taker's* benefit. Where the owner's property is taken and *destroyed* the required intent to benefit in the theft statute need not be either in a pecuniary manner nor by the taker.

"To constitute the felonious intent it is not necessary that the taking should be done lucri causa; taking with an intention to destroy will be sufficient to constitute the offense, if done to serve the offender or *another person,* though not in a pecuniary way." (Emphasis supplied) Stegall v. State, 32 Tex.Cr.R. 100, 22 S.W. 146. See also Dignowitty v. State, 17 Tex. 521.

An applicable statement is found in People v. Billings, 372 Ill. 433, 24 N.E.2d 339, 341, where the Supreme Court of Illinois in a conspiracy to commit theft case held:

"  .  .  . In order to prove conspiracy it was not necessary to prove the motive of each party was the same. The motives by which the parties are actuated may be most diverse. The love of one party for the other, sufficient to cause her to steal for him, and the desire of such other party to thereby obtain money

illegally, would be such a combination of motives as constitutes a conspiracy, even though Miss Gennarelli received no financial benefit. Attorney General v. Tufts, 239 Mass. 458, 131 N.E. 573, 132 N.E. 322, 17 A.L.R. 274. . . ."

In a circumstantial evidence case of conspiracy to commit theft it is impossible to show the intended ultimate beneficiaries of the fraudulent taking and appropriation unless the object offense of theft is completed and the property is actually appropriated. It would be unreasonable to require law enforcement officers to await the completion of the object offense so that the owner is actually deprived and the benefits are distributed before intervening. See Powers v. State, 69 Tex.Cr.R. 214, 152 S.W. 909, and Lopez v. State, 46 Tex.Cr.R. 473, 80 S.W. 1016.

■ We hold that where the circumstances show a positive agreement from overt acts to fraudulently deprive the owner of his property with a value over fifty dollars to the use or benefit of the taker or another this is enough to support a conviction for conspiracy to commit felony theft.

Witt v. State, 146 Tex.Cr.R. 627, 177 S.W.2d 781, is cited by the appellant for the proposition that an agreement between two or more persons must be proved. It is not cited for the contention that the proof does not show an intent to appropriate. Assuming that he relies upon it for authority that there was no proof to show who the conspirators intended to defraud, the case will be discussed. A truck driver, Haler, the defendant Witt and Hambrick were charged with entering into a conspiracy to steal corn from W. H. Castleberry. Haler testified that he was instructed by Witt to go to Gaines County and buy corn. He was given blank checks signed by Witt, who along with Hambrick represented the checks to be good. There was no showing that there was an agreement to steal corn from Castleberry.

In the present case, there was proof that the appellant was present at the grain com-

pany scales and was actually taking part in the attempted taking. There was no such proof in Witt's case, and it is not applicable.

■ The evidence is sufficient to prove an agreement to commit theft with intent to appropriate the property.

The judgment is affirmed.