**Frank George HENDERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 68429.

Court of Criminal Appeals of Texas, En Banc.

June 29, 1983.

On Rehearing Dec. 7, 1983.

John J. Knoff, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., W. Palmer Kelly, and Maryrose Milloy, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of possession of gambling paraphernalia; the punishment is a fine of $150.

It is alleged that the appellant on August 21, 1980, did:

"knowingly and with intent to further gambling, possess gambling paraphernalia, namely, a filled in line sheet."

It is asserted, by the appellant, that the evidence is insufficient to prove "line sheets" are gambling paraphernalia or that they were used to further gambling.

A person commits an offense, which is a Class A misdemeanor, if, with the intent to further gambling, he knowingly possesses gambling paraphernalia. V.T.C.A. Penal Code, Section 47.07.

V.T.C.A. Penal Code, Section 47.01:

"(5) 'Gambling paraphernalia' means any book, instrument, or apparatus by means of which bets have been or may be recorded or registered; any record, ticket, certificate, bill, slip, token, writing, scratch sheet, or other means of carrying on bookmaking, wagering pools, lotteries, numbers, policy, or similar games."

V.T.C.A. Penal Code, Section 47.08 provides:

"(a) Proof that an actor ... possessed ... gambling ... paraphernalia is prima facie evidence that the actor did so knowingly and with the intent to further gambling.

"(b) In any prosecution under this chapter in which it is relevant to prove the occurrence of a sporting event, a published report of its occurrence in a daily newspaper, magazine, or other periodically printed publication of general circulation shall be admissible in evidence and is prima facie evidence that the event occurred."

The line sheets alleged to be gambling paraphernalia are reproduced here:

STATE'S EXHIBIT #1

STATE'S EXHIBIT #2

**FRIDAY, AUG., 22**

| 59 N. Y. GIANTS 8.00 7:00 6 00 5 00 | 1v | | | |
| 60 DALTIMORE 3 | 3½ | | | |

**SATURDAY, AUG., 23**

| 61 GREEN BAY 8 00 7 00 6-00 5 00 | | | | |
| 62 BUFFALO 4 | 4½ | | | |
| 63 N. Y. JETS 6.00 5 00 4 00 3 00 | | | | |
| 64 PITTSBURGH 7 | 7½ | | | |
| 65 CINCINNATI 7 00 6 00 5.00 4·00 | | | | |
| 66 TAMPA BAY 5 | 3½ | | | |
| 67 CLEVELAND 7 00 6 00 5 00 4 00 | | | | |
| 68 CHICAGO 3 | 3½ | | | |
| 69 KANSAS CITY 7·00 6 00 5 00 4.00 | | | | |
| 70 ST. LOUIS 3 | 2 | | | |
| 71 OAKLAND 7·30 6 30 5·30 4 30 | | | | |
| 72 WASHINGTON 4 | 3½ | | | |
| 73 MINNESOTA 8.00 7:00 6 00 5 00 | | | | |
| 74 MIAMI 5 | 6 | | | |
| 75 NEW ORLEANS 8 00 7 00 6 00 5 00 | | | | |
| 76 DETROIT 3 | 2 | | | |
| 77 LOS ANGELES 8 30 7 30 6 30 5.30 | | | | |
| 78 DENVER 3 | 3 | | | |
| 79 ATLANTA 9 00 8 00 7 00 6 00 | | | | |
| 80 SAN DIEGO 5 | 6 | | | |
| 81 HOUSTON 9 00 8·00 7.00 6 00 | | | | |
| 82 DALLAS 1 | 1 | | | |
| 83 SEATTLE 10.00 9 00 8 00 7.00 | | | | |
| 84 SAN FRANCISCO 4 | | | | |

**SUNDAY, AUG., 24**

| 85 PHILADELPHIA 12 30 11 30 10 30 9·30 | | | | |
| 86 NEW ENGLAND 5 | 3 | | | |

**THURSDAY, AUG., 28**

| 87 BUFFALO 8 00 7 00 8 00 6 00 | | | | |
| 88 HOUSTON | | | | |

**FRIDAY, AUG., 22**

| 59 N. Y. GIANTS 8:00 7:00 6 00 5 00 | | | | |
| 60 BALTIMORE 3 | 3½ | | | |

**SATURDAY, AUG., 23**
± 24

| 61 GREEN BAY 8·00 7.00 6 00 5·00 | | | | |
| 62 BUFFALO 4 | 4 | | | |
| 83 N. Y. JETS 6·00 5·00 4 00 3·00 | | | | |
| 64 PITTSBURGH 7 | 7 | | | |
| 65 CINCINNATI 7:00 6 00 5 00 4 00 | | | | |
| 66 TAMPA DAY 5 | 3½ | | | |
| 67 CLEVELAND 7.00 6 00 5:00 4 00 | | | | |
| 68 CHICAGO 3 | 3 | | | |
| 69 KANSAS CITY 7·00 6 00 5.00 4 00 | | | | |
| 70 ST. LOUIS 3 | 2½ | | | |
| 71 OAKLAND 7 30 6·30 5 30 4 30 | | | | |
| 72 WASHINGTON 4 | 3½ | | | |
| 73 MINNESOTA 8 00 7.00 6 00 5 00 | | | | |
| 74 MIAMI 5 | 6 | | | |
| 75 NEW ORLEANS 8 00 7 00 6 00 5 00 | | | | |
| 76 DETROIT 3 | 2½ | | | |
| 77 LOS ANGELES 8·30 7 30 6 30 5 30 | | | | |
| 78 DENVER 3 | 3 | | | |
| 79 ATLANTA 9 00 8 00 7 00 6 00 | | | | |
| 80 SAN DIEGO 5 | 6 | | | |
| 81 HOUSTON 9 00 8 00 7 00 6 00 | | | | |
| 82 DALLAS 1 | 2 | | | |
| 83 SEATTLE 10 00 9 00 8 00 7 00 | X | | | |
| 84 SAN FRANCISCO 4 | | | | |

**SUNDAY, AUG., 24**

| 85 PHILADELPHIA 12 30 11 30 10 30 9 30 | | | | |
| 86 NEW ENGLAND 5 | 3 | | | |

**THURSDAY, AUG., 28**

| 87 BUFFALO 8 00 7.00 6 00 5 00 | | | | |
| 88 HOUSTON | | | | |

Officers executing a search warrant arrested the appellant while he was playing poker with a number of other people. Approximately $10,000 was in the possession of those participating in the game. The officers found the two "line sheets" in the appellant's pocket.

A vice squad officer testified, without objection that he had not been qualified as an expert witness, concerning how "line sheets" are used in betting on football games. He explained that "a line" is a point spread on a football game established for gambling purposes to stimulate an equal amount of betting on both teams. He also explained that the "line" published in newspapers, such as those of "Jimmy the Greek," were power ratings showing the expected strengths of the teams. The gambler's line is usually near or the same as the power ratings carried in newspapers.

The officer testified that the numbers in the first column of squares in the exhibits were the lines established for gambling purposes and the figures in the boxes where the teams were named were those found in the newspapers. The "line sheets" had five telephone numbers of three known bookmakers in Houston. One of them was the telephone number of Tom Venus. Although he was not arrested, Tom Venus came to the premises where the appellant was arrested while the officers were executing the search warrant. The initials T.V. over one of the columns on the "line sheet," the officer testified, indicated that the numbers below it were Tom Venus's betting lines on the games.

*Thompson v. State,* 147 Tex.Cr.R. 348, 180 S.W.2d 944 (Tex.Cr.App.1944), cited and relied on by the appellant, was a prosecution under a different statute and it is not in point. There the State had alleged a book was then and there used to record plays and bets on a policy game, but failed to prove what was alleged.

In this case it was alleged gambling paraphernalia was possessed with the intent to further gambling. The State's proof that appellant possessed the "line sheets," that they were "records," "slips," or "writings" described by the statute as gambling para-

phernalia when aided by the prima facie evidence provision of V.T.C.A. Penal Code, Section 47.08, furnished sufficient evidence to prove the appellant possessed gambling paraphernalia with the intent to further gambling.

The judgment is affirmed.

CLINTON, Judge, dissenting.

If after ascertaining the line, appellant had made a bet on one of the games, he was vulnerable to being charged with gambling in violation of V.T.C.A. Penal Code, § 47.-02(a)(1)—a Class C misdemeanor. But for simply reducing the line to written form and keeping the sheet on or about his person appellant has now been convicted of possession of gambling paraphernalia contrary to § 47.07, *id.* —a Class A misdemeanor. I cannot accept that the Legislature truly intended to permit imposition of a fine not to exceed $2,000 and confinement in jail for a term not to exceed one year upon a citizen who goes to a newstand and pays seventy five cents for a blank form line sheet,[1] and then obtaining a particular line, notes it on the form and puts the line sheet in his pocket,[2] and yet to allow only a fine not to exceed two hundred dollars on the citizen who actually uses the line to place a bet.

To justify its conviction of appellant for possessing gambling paraphernalia, the State focuses on the second part of the definition in § 47.01(5), *id., viz:*

"(5) 'Gambling paraphernalia' means ... any record, ticket, certificate, bill, slip, token, writing, scratch sheet, or other *means of carrying on bookmaking,* wagering pools, lotteries, numbers, policy, or similar games." [3]

Then, selectively extracting from that definition, the State contends that "the filled in line sheets were clearly either 'records,'

---

1. The "expert" presented by the State testified a line sheet could be thus acquired in Harris County.

2. Taken from the person of appellant were actually eight line sheets; but since there were no numbers written on six of them, they were

excluded by the trial court in that "they were not in issue."

3. All emphasis is supplied by the writer of this opinion unless otherwise indicated.

'slips,' 'writings' or other means of carrying on bookmaking." I am not persuaded.

The Legislature was concerned with gambling and gamblers, but it still distinguished the social gambler from the exploitative commercial gambler. Though all forms of gambling were proscribed by V.T.C.A. Penal Code, Chapter 47 and particularly § 47.02, the social gambler was provided a defense to the misdemeanor offense of gambling by § 47.02(b), as well as the felony offense of keeping a gambling place under § 47.04. Reserved for the exploitative gambler and his minions—"one who solicits or aids others to gamble and profits from the gambling," Practice Commentary to § 47.03—were offenses of gambling promotion, § 47.03; communicating gambling information, § 47.05; possession of gambling device or equipment, § 47.06; and possession of gambling paraphernalia, § 47.07.

With respect to the latter offense, it seems to me that what the Legislature had in mind was, first, that an offender be one who "knowingly owns, manufactures, transfers commercially, or possesses gambling paraphernalia," § 47.07(a). That is, as pertinent here, material that constitutes any "means of carrying on bookmaking, § 47.-01(5).[4] Secondly, the offender must possess gambling paraphernalia "with the intent to further gambling," § 47.07(a). Thus, possession of "means of carrying on bookmaking" et cetera, coupled with intent to further gambling, is the forbidden conduct.[5]

Bookmaking is not defined in the penal code, and the majority does not suggest a definition. According to Black's Law Dictionary (Revised Fourth Edition), "The term now commonly denotes the recording or registering of bets or wagers on any trial or contest . . . ," and that is embraced by the first part of the definition of gambling paraphernalia in § 47.01(5): "any book, instrument, or apparatus by means of which bets have been or may be recorded or registered." Our concern, however, is with the second part—"means of carrying on bookmaking."

A bookmaker is "one who determines odds and receives and pays off bets." Webster's New Collegiate Dictionary. Once determined, odds become in gambling parlance "the line." As explained by the State's witness, numbers in "the line" represent a point spread and

> "the purpose of a point spread is to stimulate an equal amount of betting on both teams. Both teams before the point spread would be assigned to the game would be unequal. What they're trying to do, they're trying to make two football teams equal and to stimulate an equal amount of betting on both teams."

So, clearly "the line" determined by a bookmaker is an essential ingredient of his bookmaking. So much so that the Legislature denounced communicating information as to bets, betting odds or changes in betting odds with intent to further gambling as a felony offense of the third degree. Section 47.05.

The question, however, is whether a bettor to whom the line is communicated commits a penal offense by noting the line numbers on a piece of paper and putting it in his pocket. I think not. Stated another way, by reducing the line to writing for his own information and ready reference in deciding on which team he will place a bet, a putative bettor does not thereby create gambling paraphernalia. For, in his hands and without more, line sheets are not a means of carrying on bookmaking. The answer may depend on whether more is shown by the evidence.

In the case at bar the officer who arrested appellant and seized the line sheets testi-

---

4. See *Evans v. State,* 623 S.W.2d 924, 926 (Tex. Cr.App.1981) when we stated that it is a criminal offense to possess any inanimate object with intent to further gambling, if the item is "a means of carrying on a lottery."

5. For me that conduct is just what one expects from an exploitative commercial gambler, rather than the bettor being exploited. To be sure, the bettor may be committing a Class C misdemeanor by placing his bet, § 47.02(a)(1), but the legislative concern with him seems to end there.

fied that they had nothing to do with the poker game then being played, no bets were indicated on either line sheet, there was no indication that appellant had taken a bet from any person in the apartment and a search of others there failed to produce slips or other information that appellant had made a bet with them or they with him. An intent to make a bet in the future is not carrying on bookmaking. In short, the State failed to prove that, when he was arrested while in the course of playing poker in a private residence with two line sheets in his pocket, appellant possessed gambling paraphernalia—much more than he had the intent to further gambling.[6]

Accordingly, I would reverse the judgment of conviction. Since the majority do not, I respectfully dissent.

ONION, P.J., and MILLER, J., join.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

MILLER, Judge.

Upon reconsideration of appellant's case, we grant appellant's motion for rehearing and adopt as the majority opinion Judge Clinton's dissenting opinion on original submission. The judgment of the trial court is reversed and the cause is reformed to show an acquittal. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

ODOM and W.C. DAVIS, JJ., dissent for the reasons set forth in Commissioner DALLY's opinion on original submission.

---

**6.** It is helpful to understand the meaning of the phrase "intent to further gambling," uniformly required in sections 47.05(a), 47.06(b), 47.07(a) and 47.08(a). In that context "to further" means to promote or advance gambling. Webster's New Collegiate Dictionary; Fernald, Funk & Wagnalls Standard Handbook of Synonyms, Antonyms & Preposition: "A person *promotes* a scheme or enterprise which others have projected or begun, and which he *encourages, forwards, furthers, pushes,* or *urges on,* especially when he acts as the agent of the prime movers and supporter of the enterprise." (Emphasis in original.) Patently, an intent to gamble is not the same as an intent to promote or to advance gambling.