### CLAUD RAY v. THE STATE.

#### No. 2430. Decided June 22, 1901.

**1.—Arson—Joint Defendants—Accessory—Severance—Practice.**

Under an indictment charging defendant and another jointly, defendant moved for a severance from his codefendant, whereupon the prosecution stated that the State would only rely upon the charge against the codefendant as an accessory in the crime; and thereupon the court refused the severance. Held, the ruling was correct. An accessory does not come within the purview of the article 707, Code of Criminal Procedure, nor article 90, Penal Code, and under the law he could only be tried after the trial of his principal, except where the principal has escaped.

**2.—Same—Evidence—Statements and Acts of Defendant's Wife.**

On a trial for arson, it was error and inadmissible to prove the conversations, statements, and acts of defendant's wife, she not being a witness on the part of defendant. She could not be used as a witness against defendant, nor could her actions, etc., be so used.

**3.—Same—Evidence.**

On a trial for arson, it is not competent or admissible to prove that one charged as an accessory was seen to leave the defendant's house with a pair of pants upon his arm, and afterwards return without the pants, in the absence of testimony showing that the pants were taken from the burned house, or that defendant had any connection with or possession of said pants.

Appeal from the District Court of Erath. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of arson; penalty, five years confinement in the penitentiary.

The indictment charged appellant with unlawfully burning the house of one Charley Judon, on the 7th of December, 1899.

No statement of the evidence required.

*Chandler, Oxford & Thompson* and *Daniel & Keith,* for appellant.

*Lee Riddle,* District Attorney, and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of arson, and his punishment assessed at five years confinement in the penitentiary.

When the case was called for trial he filed affidavits for severance as to several codefendants. These cases were all dismissed, except that

against Bob Duncan, and the severances refused. The indictment against Duncan contained several counts, among which was one charging him as accessory to appellant. The district attorney stated he would rely upon the count charging Duncan as accessory, whereupon the court refused the severance, and forced appellant to trial. Exception was reserved. If the counts in the indictment against Duncan, except the one charging him as accessory, had been dismissed, we believe this action would have been correct. But the district attorney did not dismiss as to these counts, but stated to the court he would rely upon the one charging him as accessory. An accessory, under our law, can not be tried until after the trial of the principal, except where the principal has escaped. Moore v. State, 40 Texas Crim. Rep., 389; art. 90, Penal Code. Article 707, Code of Criminal Procedure, in our opinion, does not reach this character of case. That provides for severance where two or more defendants are prosecuted for an offense growing out of the same transaction by separate indictments. It is not necessary here to enter into a discussion of the question as to whether or not the crime against an accessory is one growing out of the "same transaction." If article 707, Code of Criminal Procedure, by using the term "transaction," means the same offense, then the accessory would not come within its purview, because the accessory is not connected with the crime, but with the offender. Schackey v. State, 41 Texas Crim. Rep., 255. But, pretermitting a discussion of that question, we believe, under the terms of article 90, Penal Code, that the severance will not apply to the accessory.

While the witness Judon was testifying in behalf of the State, and after the evidence for the State had shown that the deputy sheriff, Creswell, and Judon had gone to appellant's house with a search warrant to search his premises, he was permitted to testify as follows: "When Mr. Creswell was reading the search warrant to defendant, I watched his wife. She came out of the house and came up pretty close to where Creswell and defendant were, and listened until the reading was about half through, and then she went back in the house. I then rode around to a door in the other side of the house, and came back to where Creswell and defendant were, and we then all went into the house. We searched a trunk by the side of the door, that his wife said was defendant's. We then went to search another trunk, but his wife said that was her trunk, and that there was nothing there but her clothes; but we searched it, and found nothing that was mine, and put everything back. And then I said, 'Mrs. Ray (appellant's wife), what was that you took out of Claud's (defendant) trunk awhile ago, and hid under the bed?' She said, 'It was my black skirt.' I said, 'That is all right, if it was your black skirt.' We then went into the other room, and there was a hump on the bed about midway its length, and about the same back from the front. Mrs. Ray raised up one end of the bed, and showed us there was nothing. She then raised up the other end, and showed us there was nothing; and she stood by the middle of the bed. Her father, Mr. Godwin, who was there, said 'Lula, let Mr. Creswell search.' Creswell then raised up the

bed where the lump was, and pulled out a black coat from between the springs and the bed. I said, 'that is my coat.' During all this time defendant was present, looking on, but did not say anything at all that I heard." Another bill states that the deputy sheriff, Creswell, testified, in substance, that when he went to search appellant's house he found him in the yard, and read the search warrant to him; that he and defendant went into the house, and Charley Judon and defendant's wife were also in the house. Appellant not only objected to this testimony, but moved to exclude it. This testimony in regard to acts and declarations of the wife was inadmissible. The wife could not be used as a witness against defendant; nor could she have been asked these questions, or permitted to testify to these acts and circumstances, if she had been upon the witness stand, unless on the part of defendant. It would seem to follow that, if she would not be permitted to testify against her husband without his consent, her acts could not be elicited through the mouths of other witnesses. This would be evasion of the statute. Besides, these were her acts, and not those of defendant, and could not be used against him.

Steel was permitted to testify, over defendant's objection, that he was at appellant's house one day during last fall to see him in regard to securing work, and that Bob Duncan was also present, and that he saw Duncan leave defendant's house and go into the bushes with a pair of black-looking pants upon his arm, and subsequently saw said Duncan return to the house without said pants. This testimony was inadmissible. It was not shown that the pants were taken from the burned house, nor that defendant had any connection with the pants. If the State could have shown that these were the pants of Judon, whose house was burned, and that they were in appellant's possession at the time Duncan carried them from the house, it would have been admissible as a circumstance against appellant. But until this is shown the testimony is inadmissible.

There are numerous other bills of exception, which we have examined, but do not believe they show any reversible error.

For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Note.—The State's motion for a rehearing was overruled without a written opinion.—Reporter.]