## N. A. STORY V. THE STATE.

No. 10547.   Delivered June 15, 1927.

### 1.—Murder—Evidence—As to Motive—Properly Admitted.

Where on a trial for murder, there was no error in permitting evidencè of appellant acts and intimacy with the wife of the deceased, for a long time prior to the homicide, as supporting the state's theory of his motive for the killing.

### 2.—Same—Evidence—Properly Admitted.

There was no error in permitting a witness, who overheard the conversation, to testify that appellant told his wife a few days prior to the marriage of deceased to a Mrs. Norris, that he would kill the man Mrs. Morris married.

### 3.—Same—Evidence—Suppressing Testimony—Properly Admitted.

There was no error in permitting the state to prove that a short while before his trial, appellant took the wife of the deceased, who was an impòrtant witness for the state, and her children from the State of Texas, into Arkansas, this testimony being admitted as showing an effort on the part of appellant to suppress material testimony.

### 4.—Same—Declaration of Wife—Improperly Admitted.

There was error in permitting a witness to testify that she heàrd appellant's wife say to him, referring to the wife of the deceased, "Yes, he thinks more of her today than he does of me and the children."   This testimony seems clearly violative of the rule forbidding the use of the wife's testimony against her husband.

### 5.—Same—Declaration of Deceased—Improperly Admitted.

Where, after the deceased had been carried into his house after the shooting and put to bed, a witness was permitted to testify that deceased said to his wife:. "Woman, I love you, and could die for you."   This ·testimony was improperly received.   It could not be considered as a predicate for a dying declaration, to admit subsequent statements made by him.

**6.—Same—Memorandum of Dying Declaration—Improperly Admitted.**

A memorandum of statements made by deceased to the County Attorney, offered as a dying declaration, but which were not read to, nor signed, nor approved by deceased after being written, should not have been admitted in evidence.

**7.—Same—Dying Declaration—Predicate.**

It is not necessary that deceased say in so many words—when he makes a statement offered as a dying declaration—that he expects to die. The surroundings   as well as prior statements, and in many cases testimony of others as to his condition, appearances, suffering, etc., might be looked to, to show that the statement was made in view of impending death, but the proof of a proper predicate would not authorize the admission of a writing, such as the one in this case. See State v. Sullivan, 51 Iowa 142; Green v. State, 43 Fla. 552.

**8.—Same—Requested Charge—On Dying Declaration—Improperly Refused.**

The court should have given appellant's requested charge to the effect that they could not consider the statement introduced as the dying declaration of the deceased, unless said statement had been read over to deceased and had been approved by him.

Appeal from the District Court of Cook County.   Tried below before the Hon. W. S. Moore, Judge.

Appeal from a conviction of murder, penalty ninety-nine years in the penitentiary.

The opinion states the case.

*Culp, Culp & Culp* of Gainesville, and *Boyd & Boyd* of Denton, for appellant.

On admission of dying declaration, appellant cites: Hunter v. State, 129 S. W. 125; Phillips v. State, 94 S. W. 1051; State v. Sullivan, 51 Iowa 142; State v. Twiddy, 11 Iowa 350; Green v. State, 43 Fla. 552.

*J. L. Gettys,* County Attorney of Cooke County; *Elbert Hooper,* County Attorney of Denton County; *F. H. Chandler; Sam D. Stinson,* State's Attorney, and *Robt. M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction of murder, punishment ninety-nine years in the penitentiary.

John Morris and his wife lived on appellant's place. Appellant was a frequent visitor at their home.   In 1923 Morris and his wife separated.   A witness testified that after their separation, appellant was at the Morris home, where Mrs. Morris lived, nearly every day.   In November, 1923, Mrs. Morris married deceased,

Fred Crain, who was killed by appellant on the 29th of January, 1925. The deceased and his wife and her children had continued to reside upon the place of appellant. The state's theory with regard to motive was that appellant was in love with the wife of deceased and that there had been long-continued intimacy° between them, and that appellant was jealous of and disliked deceased. A large number of bills were taken to testimony showing the relations and intimacy between appellant and the wife of deceased and their conduct with and toward each other on various occasions. Without discussing the particulars of any of these bills, we think the testimony admissible.

A witness testified to having overheard a conversation between appellant and his wife a few days prior to the marriage of deceased and Mrs. Morris, in which appellant said that he would kill the man Mrs. Morris married. We think this admissible. The bill contains no statement made by appellant's wife on that occasion.

There is testimony showing that subsequent to the homicide appellant went in his car to where Mrs. Crain and her children were, and took them from the State of Texas into Arkansas, but the bill complaining of this testimony is qualified by the court with the statement that this was but a short time prior to the setting of the case against appellant, and that the testimony was admitted as showing an effort on his part to suppress material testimony. The bill presents no error.

Mrs. Shellhorse swore that a short time before the killing she saw the appellant and his wife engaged in conversation, and that Mrs. Story, wife of appellant, referring to Mrs. Crain, wife of deceased, said: "Yes, he thinks more of her today than he does of me and the children." The admission of this testimony seems clearly violative of the rule forbidding the use of the wife's testimony against her husband, and the testimony should not have been admitted.

After the shooting, and after appellant had left the scene of the homicide, deceased was carried into his house and put on a bed. Mrs. Shellhorse was permitted to testify that deceased then said to his wife: "Woman, I love you and would die for you." The learned trial judge certifies in his qualification to the bill of exceptions complaining of the admission of this testimony, that he admitted same as showing the consciousness of impending death on the part of deceased and that same was part of a predicate for the admission of a dying declaration made thereafter. We perceive nothing in the language of indicative of any expectation of impending death. It rather strongly expressed the

affection of deceased for his wife, but nothing beyond. Its only effect here would be to stir and appeal to the sympathy of the jury. It should not have been admitted.

The most serious matter complained of appears in bill of exceptions No. 17. The state was allowed, over objection, to introduce a piece of cardboard on which the County Attorney of Denton County, had written a statement of deceased, which statement so written on said cardboard was admitted in evidence as being a dying declaration by deceased. The following statement of facts is taken from said bill:

"The statement was written on a piece of cardboard, and the state's evidence showed that the alleged statement was reduced to writing by the County Attorney from questions asked the said Fred Crain and from his answers thereto, and the same was not read over to the said Fred Crain, nor read by him, nor shown to him, nor approved by him as his statement after the same was so reduced to writing and the said written statement was not signed by the said Fred Crain or by anyone for him."

Said cardboard statement was objected to because not signed by deceased; not shown to have been given under circumstances or in the manner required by law, nor made under consciousness of impending death, and no sufficient predicate having been shown. While it is not absolutely necessary to show that a document offered as the dying declaration, was signed by the deceased, the contents of the writing, if not signed, must appear to have been made known to deceased or read by him and approved, or affirmed in some way by him as being his declaration. This doctrine seems plainly laid down in Hunter v. State, 59 Tex. Crim. Rep. 439, and Phillips v. State, 50 Tex. Crim. Rep. 127, from which authorities we deduce that such writing is but a memorandum, and that the oral testimony of what was said by deceased which formed the basis for the memorandum was admissible as a dying declaration, but such memorandum unsigned and unapproved was not so admissible.

It is not necessary that deceased say in so many words, when he makes a statement offered as a dying declaration, that he expects to die. The surroundings, as well as prior statements, and in many cases testimony of others as to his condition, appearance, suffering, etc., might be looked to to meet the requirement of our law that the statement must be made in view of impending death. However, we know of no case holding a writing such as the one under discussion, to be admissible, though same might be used to refresh the recollection of the witness. Appellant also cites in support of his objection to its admission

State v. Sullivan, 51 Iowa 142; 50 N. W. 572; Green v. State, 43 Fla. 552; 30 So. 798. We think, under the facts here, the writing should not have been admitted.

Appellant asked the court to give a special charge to the jury telling them that they could not consider the statement introduced as the dying declaration, unless said statement had been read over to deceased and approved by him. When the alleged dying declaration is in writing, as in this case, and especially when same is not signed by deceased, it would appear proper to give an instruction such as that contained in the requested charge in this case, in substance, if not in the exact language set out. The jury should be told that in order to make the written instrument offered admissible in evidence, and to be considered by them as a dying declaration, the contents of same must have been in some way made known to deceased and must have been affirmed or approved by him.

For the errors mentioned the judgment will be reversed and the cause remanded.

*Reversed and remanded.*