51 So.2d 250

**WILLIAMS v. STATE.**

**7 Div. 89.**

Supreme Court of Alabama.

March 1, 1951.

Beddow & Jones and G. Ernest Jones, Jr., Birmingham, and Ellis & Fowler, Columbiana, for appellant.

Si Garrett, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

LAWSON, Justice.

The appellant, Charles W. Williams, was tried in the circuit court of Shelby County under an indictment charging that he unlawfully and with malice aforethought killed Frank Swalley, alias John Franklin Swalley, alias John Frank Swalley, by shooting him with a gun or pistol. The jury returned a verdict of murder in the first degree and fixed punishment at life imprisonment in the penitentiary. Judgment was in accord with the verdict. His motion for a new trial having been denied and overruled, Williams appealed to this court.

The deceased lived with his wife and four children about three miles from Wilsonville, in Shelby County. On the night of October 13, 1949, the entire Swalley family left their home in an automobile at approximately 6:40 p. m. to go to a picture show in Childersburg, a town not far distant. They returned home about 9:30 p. m. Upon returning home, the deceased, who was driving, stopped the automobile near the back steps which led to the back porch. No lights were on at the rear of the home, so the deceased remained in the automobile with its lights on. The wife and three young daughters were the first to leave the automobile. They were followed a short distance by the thirteen-year-old son, Frankie. At about the time Frankie reached the bottom step, the lights on the automobile went off. After reaching the back porch, Frankie entered the kitchen where he paused long enough to get a drink of water. He then proceeded toward the front of the house, and had almost entered one of the front rooms when he heard the sound of a gunshot. He ran toward the rear of the house, from where the sound came. Just before he reached the door leading from the kitchen to the back porch he heard another shot. Frankie flipped a light switch in the kitchen, which switch was wired so as to turn on a light on the back porch and one located over the steps leading from the porch to

the ground. The light bulb on the back porch was illuminated, but the evidence does not show whether or not the outside light came on.

Frankie went on the back porch and found the body of his father lying at the top of the steps, with one half of the body lying on the porch and the lower half resting on the steps. His father was dead. He had been shot twice at close range with a twelve-gauge shotgun, the shells being loaded with number four shot. The load of one shell entered the left side of deceased; that of the other entered just under the right jaw. Powder burns surrounded both wounds.

The defendant was arrested and charged with the slaying. At a preliminary hearing held on or about November 17, 1949, he was bound over to await the action of the grand jury. He was indicted in December, 1949, and brought to trial in January, 1950. During the course of that trial a mistrial was declared for some reason not shown in this record. The judgment from which this appeal is taken was rendered on the second trial held in April, 1950.

The defendant has been a successful business man. For a number of years he served as chief appraiser for the Federal Land Bank of New Orleans. In 1937 he moved to Wilsonville and went into the retail business. He owned this business at the time of the trial, although he had moved his place of residence to Winterboro, Talladega County, in the spring of 1949, where he operated a farm and dairy. On or about June 1, 1949, he opened a farm implement business in the city of Talladega.

Mrs. Swalley, the wife of deceased, began to work for defendant at his store in Wilsonville in the fall of 1945. She worked in the office and did some of the buying. Shortly after June 1, 1949, when the farm implement business was opened in Talladega, Mrs. Swalley began to work there, but retained her connection with the Wilsonville business, dividing her working hours between the two establishments. On or about May 1, 1949, the deceased went into the employ of defendant at the latter's dairy in Talladega County. Defendant was a frequent visitor to the Swalley home and was well known by all the members of the family.

On the preliminary hearing and at the subsequent trials young Frankie Swalley testified that when he went on the back porch of his home after he heard the shots, he saw the defendant running away from the scene of the homicide. The defendant had on a dark hat, light or white shirt and dark trousers. He admitted, however, that on the night of the homicide and on the following morning he told several people that while he saw a man running away from the scene, he did not recognize him. The defendant proved by several persons who talked to Frankie within a few hours of the killing that he told them he did not recognize the man and couldn't tell whether he was a white man or a Negro. Frankie gave as his reason for not telling the name of the man he saw leaving the scene the fact that he was nervous, scared and excited. There was testimony for the defendant to the effect that Frankie was calm and displayed no signs of being emotionally upset.

Frankie also testified that the defendant was in the Swalley home frequently; that defendant and his mother took out-of-town automobile trips together; that on three occasions he heard the defendant threaten to take his father's life.

The defendant owned a new Studebaker truck equipped with Firestone tires. There was evidence for the State to the effect that at about 7:30 p. m. on the night of the homicide the defendant drove this truck onto a seldom-used logging road which eventually lead to a point approximately one-third of a mile behind the Swalley home. On the morning after the homicide the imprints of Firestone tires were found on the logging road leading to and from a point approximately one-third of a mile behind the home of deceased. Tracks of a man intersected the tire tracks and led through sagebrush and patches of "beggar-lice" to a point a short distance from the home of deceased, where the tracks could no longer be observed because of the nature of the earth. The man

tracks led to a point at a fence where the wire had been pulled apart.

There was evidence for the State tending to show that on Friday night, October 7, 1949, the defendant was seen to drive his Studebaker truck onto this same old logging road and that on that night Frankie Swalley was awakened by noises coming from the "turkey lot," which was an enclosure located at the rear of the Swalley home.

The State proved that a few minutes after 3 a. m., Eastern Standard Time, or 2 a. m., Central Standard Time, on the morning of Friday, October 14, 1949, defendant drove his Studebaker truck into a storage garage in the city of Atlanta, Georgia. "Broom sage" was caught in the car. The defendant was wearing a dark hat, light shirt and dark trousers. His trousers were practically covered with "beggar-lice." A few minutes thereafter he registered at the Robert Fulton Hotel.

The theory of the State is that defendant committed the homicide because of his infatuation for the wife of deceased. There is other evidence, aside from that of Frankie Swalley, to the effect that defendant and Mrs. Swalley were seen together frequently at places other than the business establishments where they worked and that they took trips together to Birmingham and Sylacauga in defendant's automobile. The State also proved that the wife of defendant obtained a divorce from him on the ground of voluntary abandonment about six months prior to the homicide.

The defendant testified in his own behalf. He denied that he killed deceased, with whom he claimed to be on very friendly terms. He denied being at the Swalley home or on the logging road on the night of the homicide or on the night of Friday, October 7, 1949. He admitted that he was on friendly terms with the wife of deceased, but denied that he had ever had any illicit relationship with her or that he was interested in her in any way other than as a friend or employee. He admitted that he and Mrs. Swalley had been on out-of-town automobile trips together, but claimed that such trips were solely for business purposes and were always taken with the knowledge of deceased.

The defendant testified that he left his place of business in Talladega at about 6:00 p. m. en route to Atlanta, a distance of approximately 130 miles. His reason for going to Atlanta was to transact business in that city and then continue to Griffin, Georgia, to witness a demonstration of a piece of farm machinery. According to defendant, he drove from Talladega to Anniston, a distance of approximately thirty miles. He ate supper in Anniston at a cafe on Noble Street, but had forgotten the name of the cafe. He finished supper at about 8:00 p. m. Although he drove at night, he preferred not to be on a highway at night when there was heavy traffic, so he did not immediately leave Anniston for Atlanta. From 8:00 p. m. until 10:00 p. m. he was in the lobby of the Jefferson Davis Hotel reading a newspaper and listening to the radio. He left Anniston at approximately 10 o'clock and arrived in Atlanta, a distance of 100 miles, "sometime" after 1:00 a. m., Central Standard Time, or 2:00 a. m., Eastern Standard Time.

Defendant did not deny that "beggarlice" were on his trousers and that "broom sage" was stuck in his truck when he arrived at the storage garage in Atlanta. His evidence and that of other witnesses who testified in his behalf tended to show that the broom sage became stuck in the car and the "beggar-lice" got on his trousers a day or two prior to his trip to Atlanta while he was engaged in some work on farms in connection with his farm machinery business.

Several witnesses who were present in Griffin, Georgia, on October 14th and 15th, 1949, testified that defendant was present at the demonstration of a new cotton picker held in or near that city and that defendant appeared calm and gave some valuable advice as to improvements which needed to be made on the equipment. Defendant had been interested in the cotton picker for several months and had corresponded with the inventors and manufacturers in regard thereto.

Defendant denied that he was on the logging road or in the vicinity of the Swalley home on the night of October 7, 1949,

as the State's testimony tended to show. According to defendant, he spent the night of October 7, 1949, in the room assigned to him at the Robert Fulton Hotel in Atlanta. The records of that hotel show that defendant registered there on Thursday, October 6th, and did not check out until Monday, October 10th. But the hotel records also showed that the room assigned to defendant was not occupied by him on the night of October 7, 1949.

The record in this case is very voluminous and the foregoing recital of evidence is far from being a complete statement of all the evidence, but we think it sufficient for the consideration of the questions presented on this appeal.

■ ■ The affirmative charge was not requested. There were several grounds of the motion for new trial taking the point, in substance, that the verdict was contrary to the great weight of the evidence. In brief filed here on behalf of appellant, it is not insisted that the verdict was contrary to the great weight of the evidence. But in accordance with our duty in such a case as this, we have carefully considered all the evidence and are clear to the conclusion that this court would not be justified in pronouncing the verdict palpably wrong and unjust. We are unwilling, therefore, to declare the action of the trial court in denying the motion for a new trial error to reverse. DeSilvey v. State, 245 Ala. 163, 16 So.2d 183; Caldwell v. State, 203 Ala. 412, 84 So. 272; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

■ Defendant insists that the trial court erred in permitting the State to show the association of defendant with the wife of deceased, since the evidence produced by the State in that connection failed to show an improper or illicit relationship. As before indicated, the State's evidence showed that defendant's wife divorced him about six months prior to the date of the homicide and that defendant was a frequent visitor to the home of deceased and he and deceased's wife on several occasions took automobile trips away from home. As we understand it, the argument of counsel for defendant is that evidence as to the relationship between a defendant and the wife of deceased is not admissible for the purpose of showing motive unless the evidence actually shows an adulterous relationship. The case of Beard v. State, 19 Ala.App. 102, 95 So. 333, seems to support that contention, but we cannot agree with that holding.

In Patton v. State, 197 Ala. 180, 183, 72 So. 401, 402, this court said: "The fact that deceased and his wife had separated, and the further fact that defendant was often seen with her, tended to shed some light on the relation that existed between deceased and defendant, and on the question of motive." In Bush v. State, 168 Ala. 77, 53 So. 266, the State was permitted to show that the defendant, a woman, had followed the husband of deceased to another city prior to the homicide.

The following authorities from other jurisdictions are to the effect that the defendant's undue intimacy, infatuation and frequent association with the spouse of the deceased is admissible for the purpose of showing motive for the crime, even in the absence of proof that defendant and the spouse of deceased had an illicit relationship. Blankenship v. Commonwealth, 228 Ky. 830, 16 S.W.2d 478; Frost v. Commonwealth, 258 Ky. 709, 81 S.W.2d 583; Webb v. Commonwealth, 154 Va. 866, 152 S.E. 366; People v. Selknes, 309 Ill. 113, 140 N.E. 852; Story v. State, 107 Tex.Cr.R. 293, 296 S.W. 516; State v. Fine, 90 Mont. 311, 2 P.2d 1016.

■ Appellant next insists that the trial court erred to a reversal in permitting the State to show that on Friday night, October 7, 1949, six days prior to the homicide, the defendant was seen entering the seldom-used logging road which led behind the home of deceased. We cannot agree with this insistence. Evidence showing preparation to commit crime and acts and circumstances in pursuance of its accomplishment is admissible. Pope v. State, 188 Ala. 50, 66 So. 25; People v. Arnold, 199 Cal. 471, 250 P. 168.

■ Photographs showing the scene of the homicide were introduced by the State. It was shown by witnesses who were thor-

oughly familiar with the premises that the photographs depicted the physical condition of the scene of the homicide on the night it occurred. These photographs were admitted without error. Pilley v. State, 247 Ala. 523, 25 So.2d 57; Blue v. State, 246 Ala. 73, 19 So.2d 11; Green v. State, 252 Ala. 513, 41 So.2d 566. ·

The photographs showing the wounds on the body of deceased were properly admitted in evidence. Grant v. State, 250 Ala. 164, 33 So.2d 466, and cases cited.

Defendant insists that the trial court erred in permitting State witness Homer Walton to testify over defendant's objection that in his opinion the wounds which he observed on the body of deceased were sufficient to result in death. Walton had been an undertaker for approximately twenty years and had served as coroner of Shelby County for about twelve years. In view of this predicate, together with Walton's statement as to his experience in observing and examining wounds and the effect thereof, similar to the wounds he observed on deceased, we cannot say that the trial court abused its discretion in permitting Walton to express his opinion as to the cause of the death of Swalley. Phillips v. State, 248 Ala. 510, 28 So.2d 542; Thomas v. State, 249 Ala. 358, 31 So.2d 71.

Numerous written charges were requested by the defendant. The trial court gave all of them except two, which were refused without error.

Charge 17 would hinge the conclusion of guilt upon a portion of the testimony of one witness examined on the trial, whereas there was other evidence tending to establish guilt. McKinstry v. City of Tuscaloosa, 172 Ala. 344, 54 So. 629.

There is nothing in this record to indicate that during the argument to the jury Mr. Luck, one of counsel for the State, remarked that he was convinced that the defendant was guilty. So even if it be assumed that such an argument is bad and should be excluded by a written charge, de-

fendant's requested Charge 1–A was refused without error.

Duly mindful of our duty in cases of this character, the record has been examined for any error, whether pressed upon our attention by counsel or not. We find, however, that defendant's counsel have argued all questions calling for serious treatment.

It results that we find no error to reverse, and that the judgment of the court below should be affirmed.

Affirmed.

BROWN, FOSTER, and STAKELY, JJ., concur.