LAWRENCE W. THRASH v. STATE

No. 31,138. February 10, 1960

State's Second Motion for Rehearing Overruled October 12, 1960

DAVIDSON, Judge, concurred.

WOODLEY, Judge, dissented.

*Bill McMahan, and Charles William Tessmer,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *James K. Allen,* First Assistant District Attorney, *William F. Alexander, Thomas B. Thorpe, Frank W. Watts, Phil Burleson,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge

The offense is murder; the punishment, thirty-five years.

The state's evidence reveals that appellant, his wife, and another couple were at the home of one Winona Lee eating breakfast; that Fulton (who was later killed) called on the telephone, asked to speak to appellant, and later came over to the Lee home. When he arrived, Fulton appeared to be in an argumentative mood, immediately began drinking beer, and tried to borrow an automobile. When appellant refused to loan Fulton his automobile, Fulton struck at appellant's wife and later brandished his knife in a threatening manner toward appellant. Appellant was "coaxing" Fulton to quiet down and finally got him out of the house and into the garage, at which time a shot was fired and Fulton was seen to crumple. There was another man present in the garage at the time. No witness saw a weapon in appellant's hand or on his person.

This case was tried and briefed on appeal on the theory that the state would be able to show a conspiracy between the appellant and his wife to kill the deceased, but the record before us is devoid of any proof to support such a theory. The state did prove that a few days before the shooting appellant's wife came into a store where her friend the storekeeper was cleaning his guns

and asked to borrow a pistol which was shown to be similar to the one that the state contends was used, stating that she needed one for her own protection, but there is no evidence that she bore any ill will toward the deceased or that she planned to use the pistol for any unlawful purpose. All the evidence shows that appellant, his wife and three companions were peacefully eating breakfast when the deceased called and said that he was coming over. When he got to the house, he began to "raise the roof" and was shown to be the aggressor throughout. There is nothing to show that appellant planned to kill the deceased. Neither the appellant nor his wife testified, and he did not put his reputation in issue. We have emphasized these facts because the court permitted the witness Lee to testify, over strenuous objections, that several days after the shooting appellant's wife suggested to her that if questioned by the police she should confess that she killed the deceased, stating that appellant had been in trouble ten or twelve years before, which fact would make it difficult for him if he were tried for this offense. Appellant's wife was not a co-conspirator; the statement was not res gestae. The fact that appellant had "been in trouble" would not have been admissible under Article 732a, V.A.C.C.P. It should be borne in mind that appellant did not testify or put his reputation in issue.

In Brown v. State, 103 Tex. Cr. Rep. 420, 281 S. W. 210, this court held it was reversible error to permit the arresting officer to testify that after the arrest the appellant's wife said to appellant, "I told you not to do it." In Ray v. State, 43 Tex. Cr. Rep. 234, 64 S. W. 1057, this court held it reversible error to permit the state to prove that appellant's wife in his presence made efforts to conceal the stolen property which was found in their home. In Story v. State, 107 Tex. Cr. Rep. 293, 296 S. W. 516, it was held reversible error for a witness to testify that the accused's wife told her in his presence that he thought more of another woman than he did of her. See also Hignett v. State, 168 Tex. Cr. Rep. 380, 328 S.W. 2d 300.

It must be borne in mind that there is a fundamental distinction between being an accessory to the principal offender and being a co-conspirator to the crime committed by another. To be an accessory, one must know that an offense has been committed and thereafter conceal or aid the offender to escape or avoid detection, and, of course, the wife cannot be punished as an accessory. Article 79, V.A.P.C. To be a co-conspirator, one must know that an offense is to be committed and agree in advance to aid in its commission.

There are exceptions to the rule announced by Article 714, V.A.C.C.P., which provides that the wife may not be made a witness against her husband except in cases where the husband is charged with committing an offense against her, such as res gestae statements, or where the wife is shown to have been a conspirator with her husband. Neither of these exceptions applies in the case at bar. The conversation between appellant's wife and Mrs. Lee occurred several days after the shooting, and there is nothing in this record to indicate that appellant planned to kill the deceased, and therefore none that his wife had agreed to aid in the commission of such crime.

By this inadmissible evidence, the state was permitted to prove that appellant had had prior difficulty with the law, that his wife was conscious of his guilt of the murder and was endeavoring to fabricate a defense to the crime.

In addition to the above and to demonstrate further the damaging effect of such testimony, we call attention to the fact that appellant's wife was also indicted for the instant murder, as were Mrs. Lee and the other couple who were present on that occasion. Appellant's wife filed a motion for severance, praying that some of the other co-indictees be tried first, but did not ask that appellant be placed on trial before she was tried. She filed no motion for continuance. Appellant filed a motion for continuance and a motion for severance praying that his wife be tried before him.

If appellant's wife had been tried first and acquitted, then she would have been available to appellant to have denied this inadmissible testimony after it was introduced. In the instant trial, she was not available to appellant for such purpose.

We also call attention to the following occurrence. While Mrs. Lee was being examined by the state, she was asked if appellant's wife had not told her that the sheets which had been used to wrap Fulton's body had been torn up and scattered along the road. The witness answered in the negative. The prosecutor then asked the witness if she had not shown Captain Fritz where the pieces of sheet might be found. When this question was objected to, the prosecutor without further ado stated that the witness had become hostile and that he claimed surprise, and the objection was overruled. Recently, in Pelton v. State, 167 Tex. Cr. Rep. 649, 332 S.W. 2d 529, we had occasion to point out the proper procedure to be employed when surprise is claimed. There, we said: "When the witness did not testify as expected, the jury

were withdrawn, and State's counsel testified fully as to his prior conversations with the witness and demonstrated that he was in fact surprised."

At the hearing on his motion for new trial, the appellant introduced into evidence a "suicide note" written by the witness Winona Lee after the trial, in which she recites that she was standing in front of appellant and that it was she who fired the fatal shot. The witness Lee did not commit suicide, but the state was unable to challenge the authenticity of the note.

This case was submitted to the jury on a charge of circumstantial evidence. We have concluded that the trial court erred in failing to grant the motion for new trial. Upon another trial appellant might employ such "suicide note" in cross-examining the state's principal witness Lee. Hughes v. State, 101 Tex. Cr. Rep. 540, 276 S. W. 239, is authority for the rule that where the state's case rests on circumstantial evidence the declaration of a third party that he committed the offense is a proper matter of proof.

Upon another trial we trust that the question of misconduct on the part of the prosecutor will not arise.

For the errors pointed out, the judgment is reversed and the cause is remanded.

DAVIDSON, Judge, (concurring).

I concur in the opinion reversing this conviction.

However, in my opinion there is another and additional reason reflected by this record for which I would reverse. As to that error I call attention to the following:

Appellant requested the trial court to give to the jury the following special instruction:

> ". . . . if you should find and believe from the evidence or have a reasonable doubt therefrom, that Winona Fine Lee—on or about the 3rd day of November, 1958—did shoot and kill William F. Fulton with a gun, you should acquit the Defendant, Lawrence W. Thrash, and so say by your verdict of 'not guilty.' "

That charge was refused and in lieu thereof the trial court gave the following instruction:

"You are further charged that if you should find and believe from the evidence that on or about the 3rd day of November, 1958—Winona Fine Lee or Beverly Jo[sic] Thrash did shoot and kill William F. Fulton in Dallas County, Texas, with a gun and you should further find and believe from the evidence, or have a reasonable doubt thereof, that the defendant, Lawrence W. Thrash, did not by act, word, or gesture, encourage the said Winona Fine Lee, or Beverly Jo Thrash, in the commission of said offense, if any, although physically present at the scene, if he was, you will acquit the defendant and say by your verdict, 'not guilty.' "

In effect, that charge was that if Winona Fine Lee killed the deceased appellant would nevertheless be guilty, unless the jury also believed that the appellant "did not by act, word, or gesture, encourage" Winona Fine Lee in killing the deceased.

Such charge clearly shifted the burden of proof to the appellant to establish his innocence or the fact that he did not act with Winona Fine Lee in the killing.

If Winona Fine Lee killed the deceased, appellant was entitled to have the jury instructed to acquit him unless the evidence showed, beyond a reasonable doubt, that he (appellant) was connected, under the law of principals, with the killing committed by her.

There was not the least suggestion in the evidence that if Winona Fine Lee killed the deceased appellant aided her as a principal in the commission of that crime.

When the trial court gave the instruction he did, he recognized that the evidence raised the issue that Winona Fine Lee killed the deceased.

In this connection, I call attention to the fact that Winona Fine Lee testified that she admitted to the arresting officers that she killed the deceased. According to her testimony, she was present when the killing took place. She had a motive for the killing, because three weeks prior thereto deceased had assaulted and beaten her to the point that she was confined in a hospital

for four days, according to her testimony. A gun which could have been the murder weapon was found in her apartment in a closet.

In addition to all these facts, the state's case against the appellant was circumstantial and based upon circumstantial evidence. The trial court so instructed the jury in his charge.

Moreover, if the testimony of the accomplice Winona Lee be taken from consideration, about all there is left is testimony showing that a shot was heard, a man was seen to slump, and some time thereafter the body of the deceased was found at another and different place from the scene of the shooting.

That appellant was entitled to the charge requested appears definite. Branch's P. C., 2d Edition, Vol. 4, p. 608, Secs. 2246 and 2247.

WOODLEY, Judge, (dissenting).

I am unable to agree with the majority either in their version of the evidence or their application of the law.

Nothing can be said for the deceased other than that he was a human being and had the right to live. He was a pimp, thief, burglar and narcotic addict. He had no legal right to complain that appellant's clothes were in Winona Lee's closet, or to question appellant's authority to refuse him the use of Winona's Cadillac, yet this was the reason for his "argumentative mood."

On the other hand, appellant had no lawful right to spend the nights with Winona Lee; to keep his clothes in her bedroom closet and to assume authority over her automobile. If she did accord him that privilege, he had no right to get rid of Fulton because of his interference with his association with Winona.

The record shows that the motive for the killing of Fulton was to get rid of him, that he could no longer so interfere.

Appellant shot Fulton with a pistol, fired at close range, in the garage at Winona Lee's apartment. The bullet caused his death within 30 minutes. His body was removed from the garage and buried in a thicket. All of the clothing was removed and a 2½ inch opening was made in his side at the point of entrance of the bullet, in an effort to extract it.

Here are the facts implicating Beverly Thrash in the murder:

Two days before the killing she acquired a Smith and Wesson .38 caliber revolver from a package store operator, who said it was not for sale. She was allowed to take it upon her statement that she "would like to try it."

In the quarrel preceding the shooting she was involved. She told Fulton he was "too goofy" to drive an automobile, and he slapped at her. Winona started as if to get into the disturbance and when appellant told Beverly to take Winona out of the room before she got hurt, Beverly took Winona in the bathroom.

After she witnessed the firing of the shot and appellant had come out of the garage, put his arm around Winona, told her everything was all right, not to cry and led her back into the apartment, Beverly gave her several seconal tablets.

Appellant told Beverly to "go and see if Fulton is all right" and "to take Fulton a glass of water." She went, and when she returned she said "Bill Fulton is dead."

Beverly left the garage in the Cadillac belonging to appellant, who was driving.

Beverly was in the Cadillac with appellant when a Texas Highway Patrolman stopped them and found a .38 caliber Smith and Wesson revolver, which was or looked like the one Beverly had said she "would like to try," under the driver's seat.

The bullet taken from the body of Fulton had sufficient characteristics to cause the ballistic expert to express the opinion that it was fired from the pistol.

A shovel and some coveralls or overalls were found in the trunk of the car. The officer testified that appellant was intoxicated.

When stopped by the patrolman Beverly and appellant were traveling toward Dallas from the vicinity where the nude body of Fulton was found three days later in a shallow grave dug in a thicket.

It was in this state of the record that Winona was permitted to testify that in appellant's presence Beverly suggested to her

that, if questioned by the police, she should admit killing Bill Fulton and made the explanation referred to in the majority opinion.

Appellant's response to the statement of Beverly was in action rather than in words. Beverly was the spokesman throughout, according to Winona. The court was careful to confine the evidence admitted to the acts and conduct of appellant and of Beverly in his presence.

Pursuant to the suggestion made by Beverly, in his presence, appellant drove Winona and Beverly to the vicinity where the body was found for the purpose of acquainting her with its location. She had been put to sleep by the seconal tablets Beverly gave her.

They had not reached the grave when they heard by radio that the body had been found.

As suggested by Beverly in appellant's presence, Winona told Captain Fritz that she shot and killed Fulton. Shortly however, she retracted such confession and stated that appellant shot and killed him in the garage at her apartment and that she was present.

The trial judge correctly admitted the statement as that of a co-conspirator.

"When two or more are found acting together, with an unlawful intent in the commission of an offense, the common design and acting together makes them ipso facto conspirators." Sinclair v. State, 159 Tex. Cr. R. 35, 261 S.W.2d 167, 171, quoting from Cox v. State, 8 Tex. App. 254, 255, 303.

When the husband and wife are co-conspirators, or when the evidence justifies such a conclusion by the jury, the declaration of the wife is not privileged under the statute, Goforth v. State, 100 Tex. Cr. R. 442, 273 S.W. 845.

The testimony of Winona as to the statement of Beverly made in appellant's presence and acted upon by him was admissible as an implied admission, without regard to whether or not Beverly was a principal or whether or not the conspiracy to kill Fulton incompassed the disposal of his body and the destruction of the evidence.

"Where the statement is made in the presence of a party

under circumstances that he heard and understood what was said, had an opportunity to reply and would naturally have replied unless he admitted the truth of the statement, his silence may be received as a tacit admission of its truth." Texas Law of Evidence, 2d Ed., Sec. 1152.

The same rule has been referred to as conduct evidence; that is, testimony concerning statements made in the presence of the defendant may be admissible if the statement evokes a reaction by the defendant which constitutes an acknowledgment of guilt.

The statement of Beverly does not come within any exception to such rule, such as where the statement does not properly call for a response from the accused. Loggins v. State, 8 Tex. App., 434, 443.

The cases cited by the majority do not hold to the contrary.

In Brown v. State, 103 Tex. Cr. R. 420, 281 S.W. 210, the husband was under arrest. The above rule has no application under such facts.

In Story v. State, 107 Tex. Cr. R. 293, 296 S. W. 516, the statement was made in reply to the husband's statement, and the wife who made it was not implicated in the killing which occurred the same day. The court found another ground for reversal which was referred to as "the most serious matter complained of" and did not reverse because of the admission of the wife's statement.

In Ray v. State, 43 Tex. Cr. R. 234, 64 S.W. 1057, the opinion points out that the acts of the wife of the defendant, in attempting to conceal the stolen property, were her acts, not those of the appellant. Declarations of the wife were not involved.

Hignett v. State, 168 Tex. Cr. Rep. 380, 328 S.W. 2d 300, is authority only for the proposition that the state is not permitted to call the wife of the defendant, who is incompetent to testify as a witness for the state.

My view of the evidence concerning Beverly's complicity in the murder is fortified by the fact that appellant's counsel requested and the trial court submitted the defensive issues upon the theory that Beverly shot and killed Fulton, and upon the theory that Winona shot and killed him.

The occurrence referred to in the majority opinion concerning the state's claim of surprise, and the court's failure to retire the jury and hear proof demonstrating the surprise, is easily explained by reference to Ex Parte Lawrence W. Thrash, 167 Tex. Cr. Rep. 409, 320 S. W. 2d 357.

In that case Captain Fritz testified that both Winona and Beverly told him that appellant shot and killed Fulton, and Beverly said that she attempted to remove the bullet with her hand and with Fulton's knife, and that she and appellant took the body in the Cadillac to the place it had been found, and that she dug the grave. She also told Captain Fritz where they had thrown part of the bed sheet they had wrapped about his body.

Winona, according to Captain Fritz, related the statement that Beverly had made to her about which she testified, and also her statement as to her part in the disposition of the body and the destruction of the evidence, and both Beverly and Winona showed Captain Fritz where the parts of the sheet which he found were thrown.

The same able and conscientious district judge having presided at both trials, it is evident that there was no occasion to retire the jury when Winona gave a different version of Beverly's statement and of her statement to Captain Fritz.

As to the so called suicide note, the fact of its being written after the trial rested upon the testimony and opinion of Beverly, at whose instance Winona had previously confessed to killing Fulton. The jury heard the testimony regarding Winona's first confession and its repudiation. It is doubtful that another confession by her after she again came in contact with Beverly would result in a more favorable verdict before another jury.

### ON STATE'S MOTION FOR REHEARING

DAVIDSON, Judge.

By motion for rehearing, supplemented by able oral presentation, state's counsel presses upon us his contention that the facts warranted the trial court's conclusion that a conspiracy was shown to exist between appellant and Beverly Jo Thrash, so as to authorize the receipt in evidence of the latter's hearsay statement.

The question presented is exceedingly troublesome and has received much study by the entire court.

The conclusion reached by me is that though I was to agree that the statement was admissible, as contended by the state, such conclusion would by no means require or authorize me to conclude that this conviction should be affirmed.

I am thoroughly convinced that the appellant was entitled to have the jury affirmatively instructed, as he requested, to the effect that if Winona Fine Lee killed the deceased he (appellant) would not be guilty.

As I pointed out in my concurring opinion, the facts raised that defense, and appellant was entitled to have the jury pass directly thereon without the necessity of a finding by such jury that he did not act with Winona Fine Lee in killing the deceased.

From time immemorial it has been the unbroken rule that an accused is entitled to have his affirmative defenses submitted to the jury. I could never agree to affirm this case in the face of the error in failing to do so upon the part of the trial court.

Presiding Judge Morrison remains convinced that the conviction should be reversed for the reasons stated in the original opinion.

I am convinced that the judgment should be reversed because of the error in the charge, as above pointed out.

Judge Woodley remains convinced that the judgment should be affirmed, for the reasons pointed out in his dissenting opinion.

The state's motion for rehearing is overruled.