The appellant, a bail bondsman for Dean Bonding Company in Montgomery, Alabama, was indicted and convicted for offering a bribe to a City of Montgomery police officer in violation of Section 13-5-30, Code of Alabama 1975. Punishment was set at two years' imprisonment.
The State's evidence was sufficient to authorize a finding by the jury that on the night of September 11, 1977, the appellant, Allen Cantebury, and James "Sonny" George offered to pay Montgomery police officer Mike Armstrong one thousand dollars to supply them with "inside" information to protect an "escort service" that they were going to establish in the city as a front for prostitution. The appellant, at this same meeting, also told Officer Armstrong that he was going to give him one-half of his one-third of the money that they (the appellant, Cantebury, and George) were going to take in on this escort service. When Armstrong replied, "It sounds good", George outlined everyone's duties in the escort service. During this conversation the appellant was "nodding affirmatively" in agreement with what was being said.
Armstrong's job according to George's testimony,
 "was to protect the escort service by telling Sonny, John (the appellant), or Allen when vice raids were going to be planned or when the vice was going to hit the trailer in which the prostitutes would be living to advise them when a narcotics officer would attempt to make a prostitution arrest on the prostitutes or to let them know when one of their girls was busted, for me to take care of it in my office and try to prevent them from being put in jail."
* * * * * *
 "Sonny, on the jobs that were provided, wanted me to make a list of all known prostitutes in Montgomery including the prostitutes that we had arrested, or prostitutes that we had not arrested, to provide him with the names and addresses of these prostitutes, so that he in turn could get in touch with these prostitutes and put them to work in the escort service."
* * * * * *
 "John Pope's job was to get prostitutes out of jail that had been arrested, if any were arrested in the escort service, to recruit other females in the City of Montgomery *Page 371 
for prostitution, and to take females out of jail that had been arrested for various charges and recruit them for the prostitution service. The job of Allen Cantebury, he was more or less the brains of the operation. He would handle all the paper work and all the money that was involved in the escort service."
George was "the pimp". "He works the ladies."
At a subsequent meeting the appellant confirmed this arrangement and stated that "he was tired of fooling around, that it was time to get this thing (escort service) started".
 "Now, I've (appellant) went to a lot of trouble. I've got Mike (Armstrong), and Mike is going to take care of the escort service. He's going to tell us when the Vice Unit is going to hit. We've got our inside man and he's going to take care of that. Sonny (George), you're going to run the ladies. You're going to be the pimp, and Al (Cantebury), you're going to take care of all the money, and my job is to recruit, and that's the way it's going to be."
Armstrong testified that "everyone agreed" to this.
Officer Armstrong had several meetings with the appellant both prior to and after September 11, 1977, the date the bribe was offered. These meetings began on August 26, 1977, and continued to the time of the appellant's arrest on September 28, 1977. All during this time Armstrong was a police officer for the City of Montgomery.
The appellant testified in his own behalf. The core of his defense was that Armstrong was going to resign from the police department and go to work for the bonding company and for the appellant, selling used cars and in the escort service. Only after Armstrong resigned was his knowledge of the police department to be used to "screen the applicants" for the escort service. The appellant insisted that Armstrong was not going to be used as an "inside man" and that "the only involvement . . . (the appellant) was going to have in the escort service is just on legitimate dates". The appellant testified that he never heard anyone offer Armstrong a bribe and that any job offer he made to Armstrong concerned Armstrong's services in a civilian capacity after he had resigned from the police department.
 I
Initially, the appellant contends that the trial court erroneously admitted evidence of distinct and independent offenses.
The rules of evidence regarding the admission of evidence of the accused's commission of crimes not charged in the indictment have been given considerable attention by the courts of this state. The rules are clearly and concisely summarized in C. Gamble, McElroy's Alabama Evidence § 69.01 (3rd ed. 1977).
 "On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question."
* * * * * *
 "The foregoing exclusionary rule does not work to exclude evidence of all prior crimes, only such as are offered to show the defendant's bad character. If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than as tending to prove guilt via bad character, then proof of such other act is admissible."
Evidence of the accused's commission of another crime is admissible to show guilty knowledge, criminal intent, and plan, design, scheme or system.
 "Evidence of the accused's commission of another crime is admissible if his knowledge of a certain fact (which usually *Page 372 
means his reason to believe the existence of such fact in consequence of things seen by him or information received by him) is an element of the now-charged crime and his commission of such other crime was reasonably calculated to bring to him such knowledge." McElroy, supra, § 69.01 (4).
* * * * * *
 "If the accused is charged with a crime that requires a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now-charged crime. This rule is based upon the theory that, because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question, the greater the likelihood that the act in question was not done inadvertently." McElroy, supra, § 69.01 (5).
* * * * * *
 "Evidence of the accused's commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measurably broad and general in scope." McElroy, supra, § 69.01 (6).
Detective Armstrong arrested Debra K. Short for prostitution on August 25, 1977, the day before he first met with the appelant. She swore out a complaint against Armstrong for sexual abuse. The appellant vas aware of this and expressed some concern over the matter. Armstrong testified that on August 28th, the appellant telephoned and said:
 "Hey, I want to talk to you about Debra K. Short, what we ought to do about that problem."
When Armstrong met with the appellant that day following the telephone call, the appellant told him
 "that the white female prostitute that I had arrested was going to cause a lot of problems for me in my office and in my duty as a police officer and that he felt it best that she be shipped out of town, that he had two boys coming down from Birmingham that would take her out of Montgomery and put her to work in massage parlors or prostitution on the street in Birmingham, Alabama, and other places in North Alabama. He further stated at that time that if she would not go on her own that they would have her killed —"
The appellant also told Armstrong that the "two boys coming down from Birmingham" were "two men that he had worked with". When George and Cantebury arrived, George asked the appellant, "Do you want us to pick her up —"
This evidence concerning the problems Short might cause Detective Armstrong was highly relevant to show the appellant's intent to bribe him in his capacity as a police officer and not merely to employ him after his resignation from the police department. Any problem Short's complaint could cause Armstrong would be of no significance to the appellant if Armstrong was going to resign in the near future and not operate as an "insider" supplying information to the appellant. The suppression or destruction of Short's ability to pursue her complaint against Armstrong would avoid bringing him into any type of suspicion with the police department which would prevent or hinder his activities with the escort service. In this sense the fact that Short's complaint had to be dealt with was in keeping with and pursuant to the scheme embraced in the charge of bribery.
 "The gravamen of the charge (of bribery) is the corrupt solicitation or attempt to influence a public officer, and some latitude must be allowed in the range of evidence admitted when such a question is involved. . . . The intent (to corruptly influence a public officer in his official action) is a material constituent of the crime charged; and the general rule that the prosecution will not be allowed to introduce evidence of other distinct *Page 373 
offenses, for the purpose of showing the accused guilty of the offense specifically charged, does not apply, when it is material to the inquiry to show the intent with which the act charged was committed."
 Roden v. State, 5 Ala. App. 247, 254, 59 So. 751
(1912).
This testimony would also be relevant, when considered with other circumstances, in showing the existence of a conspiracy among the appellant and others to commit the charged offense.
George's statement made in the presence of the appellant, Detective Armstrong, and Cantebury that he was currently paying several vice officers in the Birmingham Police Department to protect prostitution in Birmingham, and the appellant's statement that there were "several police officers in the Montgomery Police Department of high rank that he should set up a prostitute with to have them, in case they came down on us, they would have them by blackmail", are relevant and admissible to show the appellant's intent and guilty knowledge of the illegal scheme prematurely terminated by his arrest. Furthermore there was no objection or motion to exclude this testimony and hence no adverse ruling by the trial court. Matters not objected to at the trial level cannot be raised or considered for the first time on appeal. Brown v. State,50 Ala. App. 702, 282 So.2d 322 (1973); Burton v. State,48 Ala. App. 713, 267 So.2d 503 (1972); Fuller v. State,38 Ala. App. 493, 90 So.2d 244, cert. denied, 265 Ala. 695,90 So.2d 245 (1956).
The appellant's contention that testimony was improperly admitted concerning a female prostitute bringing George one hundred eighty dollars in Birmingham for "tricks she had turned" is not subject to review by this court. The appellant's objection was sustained and the trial judge instructed the jury to disregard therefore nothing is presented for review.Robinson v. State, 342 So.2d 1331 (Ala.Cr.App. 1977).
 II
A related argument presented by the appellant is that the trial court improperly admitted into evidence the series of meetings occurring from August 26, 1977, to September 17, 1977, between the appellant and Officer Armstrong when the actual bribe was made on September 11th.
Antecedent circumstances tending to shed light on the criminal transaction or elucidate facts or show preparation to commit the crime are admissible in evidence. Mincy v. State,262 Ala. 193, 78 So.2d 262 (1955); Ellis v. State, 244 Ala. 79,11 So.2d 861 (1943); Henry v. State, 57 Ala. App. 383,328 So.2d 634 (1976). Circumstances in pursuance of the accomplishment of a crime are admissible. Williams v. State, 255 Ala. 229,51 So.2d 250 (1951). Evidence tending to establish the guilt of the accused is not rendered incompetent because it may tend to show his guilt of another offense. Snead v. State, 243 Ala. 23,8 So.2d 269 (1942); Williams v. State, 126 Ala. 50, 28 So. 632
(1900); Hammonds v. State, 354 So.2d 345 (Ala.Cr.App. 1978);Kirkwood v. State, 3 Ala. App. 15, 57 So. 504 (1912). An accused's acts, declarations and conduct against interest are always competent evidence. Dockery v. State, 269 Ala. 564,114 So.2d 394 (1959); Blackwell v. State, 264 Ala. 553,88 So.2d 347 (1956). Any conduct or declaration of an accused having a relation to the offense charged, indicating a consciousness of guilt, is admissible as evidence against him. Conley v. State,354 So.2d 1172, 1179 (Ala.Cr.App. 1977).
 "Any indications of a consciousness of guilt by a person suspected of or charged with crime, or who may after such indications be suspected or charged, are admissible evidence against him. The number of such indications it is impossible to limit, nor can their nature or character be defined. Presumptions or inferences may be, and often are, founded on circumstances which, of themselves, independent of the accusation, would not be ground of crimination. It is largely a question of fact, rather than a question of law, for *Page 374 
the determination of the jury, whether particular conduct, or particular expressions of the accused, refer to a criminal offense, and spring from his consciousness of guilt. When it is clear that they have no relation to the offense, and that they ought not to have any influence with the jury, it is the duty of the court to reject them as evidence. But however minute or insignificant they may be, shedding but a dim light upon the transaction, if they have a tendency to elucidate it they must be admitted. They may be connected with other circumstances which will constitute a chain of evidence, leading the mind to a satisfactory conclusion."
McAdory v. State, 62 Ala. 154, 159-160 (1878).
While the actual bribery offer was made at one meeting, each meeting between the appellant and Officer Armstrong was relevant in indicating a consciousness of guilt by the appellant and in disclosing his intent. To have allowed only the events of the single meeting in evidence would have presented the jury with a partial and limited view of the circumstances and nature of the criminal act charged.
 III
The appellant's final allegation of error is that the evidence which tended to show a conspiracy between the appellant, George and Cantebury was improperly admitted because the indictment charged the commission of a specific offense and a specific act of bribery or attempted bribery — not conspiracy.
A conviction of one charged in the indictment with having been the actual perpetrator of a crime is authorized on proof of a conspiracy or that the accused aided or abetted in the commission of the crime. Stokley v. State, 254 Ala. 534,49 So.2d 284 (1950); Jolly v. State, 94 Ala. 19, 10 So. 606
(1891). An aider and abettor may be indicted directly with the commission of the substantive crime and the charge may be supported by proof that he only aided and abetted in its commission. United States v. Merriwether, 329 F. Supp. 1156, affirmed, 469 F.2d 1406 (5th Cir. 1971).
We have carefully searched the record for error and finding none affirm the judgment of conviction.
AFFIRMED.
All Judges concur.